JASON D. GUINASSO, ESQ.
HUTCHISON & STEFFEN, PLLC
SBN# 8478
500 Damonte Ranch Parkway, Suite 980
Reno, Nevada 89521
Telephone: (775) 853-8746
Facsimile: (775) 201-9611
jguinasso@hutchlegal.com
*Attorney for Plaintiff*

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| LAURA CONKLIN, an individual; | Case Number: |
| Plaintiff, | |
| v. | **COMPLAINT AND JURY DEMAND** |
| CITY OF RENO, a municipality; CITY OF RENO ex. Rel. its DEPARTMENT of POLICE, a municipality; DAVE EVANS, in his individual and official capacities; SCOTT SHAW, in his individual and official capacities; and DOES 1 through 10 inclusive. | |
| Defendant. | |

**COMES NOW**, Plaintiff, LAURA CONKLIN ("Plaintiff" or "Conklin"), by and through

the undersigned counsel of record, and hereby requests a jury trial relative to all issues triable as

follows:

### JURISDICTION AND VENUE

1.      This is a civil action seeking damages against Defendants, CITY OF RENO, a

municipality; CITY OF RENO ex. Rel. its DEPARTMENT of POLICE, a municipality; DAVE

EVANS, in his individual and official capacities; and SCOTT SHAW, in his individual and official

1  capacities (hereinafter collectively referred to as "Defendants") for committing acts under color of
2  law which deprive Plaintiff of rights secured under the Constitution and laws of the United States
3  of America; and for conspiring for the purpose of impeding and hindering those rights as
4  guaranteed under the Constitution of the United States with intent to deny Plaintiff equal protection
5  of the law and other rights and liberties, and for refusing or neglecting to prevent such deprivation
6  and denial, as will be more fully specified below.

7      2.      Plaintiff, Laura Conklin brings this action under Title VII of the Civil Rights Act
8  of 1964 (42 U.S.C. § 2000 *et. seq.*), 29 U.S.C. § 630 *et. Seq.*, and 29 U.S.C. § 621 *et. seq.*, to
9  remedy acts of employment discrimination perpetrated against her by the City of Reno (the
10  "City"). Plaintiff contends that the City of Reno discriminated against her by passing her over for
11  promotions because of her gender, and her sexual orientation. Plaintiff further asserts that the City
12  retaliated against her for having complained about such discrimination, retaliation, and unfair
13  treatment.

14      3.      This action further arises in part under the Fourteenth Amendment to the United
15  States Constitution, as hereinafter more fully appears.

16      4.      By virtue of the constitutional and statutory questions as established above, the
17  United States District Court may exercise federal question jurisdiction under 28 U.S.C § 1331, and
18  28 U.S.C. § 1343.

19      5.      Venue is proper in this judicial district under 28 U.S.C. § 1391; as Plaintiff was
20  employed with the City in Nevada at the time of the alleged discrimination, Plaintiff's employment
21  records are maintained by the City, Defendant conducts business in this judicial district, and
22  decisions adverse to Plaintiff's employment that are the subject of this civil action were made in
23  this judicial district.

**PARTIES**

6.      Plaintiff is a citizen of the United States and a resident of the State of Nevada. At all times relevant to this action, Plaintiff resided in Washoe County, Nevada, and at all times relevant to this action, was employed by City of Reno Department, and is a "person" within the meaning of 42 U.S.C. § 2000e(a) and 29 U.S.C. § 630(a).

7.      Upon information and belief, Defendant, City of Reno is a municipality organized and existing under, and by virtue of, the laws of the State of Nevada, and licensed to do business, within the State of Nevada.

8.      Upon information and belief, and at all times relevant to this action, Defendant, City of Reno was an "employer" within the meaning of 42 U.S.C. § 2000e(b) and 29 U.S.C. § 630(b) because it employed twenty or more individuals on a full-time basis in excess of twenty weeks per year.

9.      Upon information and belief, Defendant DAVE EVANS is a citizen of the United States and a resident of the State of Nevada. At all times relevant to this action, resided in Washoe County, Nevada, and at all times relevant to this action, was employed by the City of Reno as Reno Police Chief who supervised the SET Team and is a "person" within the meaning of 42 U.S.C. § 2000e(a) and 29 U.S.C. § 630(a).

10.     Upon information and belief, Defendant SCOTT SHAW is a citizen of the United States and a resident of the State of Nevada. At all times relevant to this action, resided in Washoe County, Nevada, and at all times relevant to this action, was employed by the City of Reno as a Lieutenant, and is a "person" within the meaning of 42 U.S.C. § 2000e(a) and 29 U.S.C. § 630(a).

11.     Plaintiff does not know the true names and capacities, whether a business entity, governmental, or individual, of those Defendants sued herein as Does 1-10, inclusive. Plaintiff

1 prays leave that when the true names and capacities of said Defendants are ascertained, she may

2 be permitted to insert the same herein with appropriate allegations; however, upon information

3 and belief, Plaintiff alleges that each Defendant is legally responsible for the events and

4 happenings referred to herein and proximately caused damages to Plaintiff, as alleged herein.

5       12.     That each Defendant is the agent, servant, employee, representative, principal,

6 master, supervisor and/or employer of each of the other Defendants; each Defendant was acting

7 within the service and scope of that agency, employment or other relationship at all times alleged

8 herein. Relief is sought herein against each and all Defendants, as well as its or their agents,

9 assistants, successors, employees and all persons acting in concert or cooperation with them or at

10 their direction.

11 <u>**GENERAL ALLEGATIONS**</u>

12 **A Target for Abuse**

13       13.     Laura Conklin (hereinafter "Conklin") was hired by the Reno Police Department

14 ("RPD" or the "Department") on May 4, 1998. At the time of her hiring, she was assigned the

15 position of Officer (on probation).

16       14.     Throughout her tenure with RPD, Conklin is and has been open about her

17 homosexual orientation.

18       15.     Very soon after Conklin's hiring, fellow employees, officers, and supervisors began

19 engaging in various acts of discrimination against her on account of her sex and sexual orientation.

20 By way of example, many RPD and City employees frequently referred to Conklin in derogatory

21 and inappropriate terms such as "cunt" and "dyke"; others made disparaging comments about the

22 propriety of a woman and/or lesbian serving as a police officer.

23       16.     Defamatory comments and aggressive actions like the ones described above

1    quickly became an enduring feature throughout Conklin's tenure with the RPD and persist to this

2    day.

3        17.    During Conklin's initial training, she was assigned to the supervision of Officer

4    Pete Rinaldo ("Rinaldo").

5        18.    Sometime on or about September 1998, Rinaldo approached Conklin to tell her that

6    he was sexually attracted to her fellow trainee, Wendy Woods ("Woods"). While seated in the

7    patrol car with Conklin, Ronaldo told Conklin that she was "not doing well" and that, if she wished

8    to pass her training, she would convince Woods to "skinny dip" with him. Conklin refused

9    Rinaldo's request.

10       19.    Rinaldo later asked Conklin to photograph Woods while changing in her

11   underwear. Again, Conklin refused Rinaldo's request.

12       20.    Shortly thereafter, Rinaldo gave Conklin poor evaluations and began spreading

13   gossip and rumors about Conklin, and frequently referred to Conklin as a "cunt" or a "dyke."

14       21.    Rinaldo continued in his vindictive behavior and comments toward Conklin for the

15   better part of a decade, causing animosity against Conklin within the RPD to swell to the point

16   where going forward she was considered *persona non grata* amongst her co-workers and

17   managers.

18       22.    Conklin filed complaints with the Department against Rinaldo. In turn, Rinaldo

19   filed a harassment complaint against Conklin. The RPD issued Conklin a "cease and desist" order

20   to stop discussing her complaints against Rinaldo and the Department.  Conklin was told, "that is

21   Pete [Rinaldo] being Pete," in response to Rinaldo's conduct.  Rinaldo was not disciplined for his

22   behavior nor has his behavior ever been addressed by the Department; Rinaldo still retains the

23   position of Police Training Officer to this day.

23.     During a deposition of Commander Shannon Wiecking, then City of Reno Attorney Jack Campbell ("Campbell"), made a reference to Conklin and other lesbians as "dykes on bikes." Campbell has since left the employment of the City of Reno.

24.     As a consequence of Conklin's resistance to this and other discriminatory behavior, she was denied several opportunities for promotion and advancement in the RPD throughout her tenure.

### Denial of Advancement

25.     Beginning in April 2004, Conklin left her position as Officer to pursue detective work with the RPD. Conklin's first term as a detective lasted from approximately April 2004 through January 2009.

26.     When Conklin initially applied for the detective position, she made it very clear to her supervisors that her preference was to work in the Crimes Against Persons division. Conklin made nine (9) separate applications to work the homicide assignment during this time.

27.     Conklin met all of the RPD performance and competence requirements to work as a homicide detective at the time of each of her applications.

28.     On eight (8) out of nine (9) of Conklin's applications for homicide, she was denied the position. In each of those instances, the person who received the appointment was a straight male with equal or lesser qualifications (including, e.g., seniority, discipline, test scores, recommendations, etc.).

29.     In lieu of work on the homicide team, Conklin was frequently assigned to less desirable work in family crimes, burglary, and auto theft.

30.     After an 18-month hiatus, Conklin returned to detective work in June 2010 and remained a detective through May 2011.

31. During the above-referenced time, Conklin requested to work in any other assignment than family crimes and submitted a formal application request to work in the sex crimes division. Conklin's request was denied in favor of a straight male applicant, and Conklin was again placed in the Family Crimes Unit.

32. As a consequence of RPD's refusal to assign Conklin the coveted work she desired and for which she was eminently qualified, RPD adversely affected Conklin's career growth for several years.

33. In 2016, after obtaining the position of Probationary Sergeant again, Conklin was additionally subjected to rigorous monthly evaluations by Lt. Scott Shaw, who was not her direct supervisor, yet indicated he wanted to evaluate Conklin. The evaluation was allowed by Commander Katre even though Shaw did not supervise Conklin on a daily basis and had only been on the same shift as her for a couple of hours. Lt. Shaw and other Lieutenants disparately applied much less scrutiny in his evaluations of Conklin's male counterparts (other probationary sergeants).

34. In 2018, after applying for a Robbery Homicide Detective Sergeant Position and Family Crimes Detective Position, Conklin was told that a de facto "test" was in fact an "interview" so the RPD would not have to maintain a list of qualified applicants for future openings. The "interview" however consisted of eight (8) detective sergeant specific questions that had to be studied for previously, in order for an applicant to be successful. Both applicants ultimately selected for the position, Colby Palmer and Larmon Smith were male.

### RPD Patterns of Discrimination

35. After leaving detective work to return to beat officer status, Conklin studied for the Sergeant test.

36.     During a deposition of Rinaldo, it was discovered the SET and its supervisors frequently used the euphemisms "Canadian" and "Monday" to describe African-American civilians targeted for disparate treatment. Conklin also learned that Rinaldo used the term "spic" to describe a Hispanic officer.   During this time, Dave Evans was the SET Sergeant and Officer Rinaldo was a member of the SET Team and engaged in and allowed this behavior.

37.     Conklin volunteered as a witness to expose the habitual use of racial epithets against civilians and officers during an internal investigation.

38.     During a deposition concerning the use of racial epithets, Conklin disclosed under oath information concerning the racially discriminatory activities of fellow officers and supervisors above her.

39.     Attorneys for the City of Reno forwarded a copy of the transcript of the above-mentioned Conklin deposition to then Reno Police Chief Dave Evans ("Evans"), who supervised the SET Team, as a Sergeant during the time the euphemism and racist comments were pervasive. Upon information and belief, Evans read the transcript and made notes of Conklin's statements incriminating and/or implicating the Department and supervisors of the SET. Dave Evans used this information against Conklin during his career advancement up to the level of Deputy Chief.

40.     As one of the two female supervisors at the RPD, Conklin attempted to institute a training course specifically for female officers to allow them to accomplish the same tasks as their male counterparts. Although the training program was approved and ordered by Chief Jason Soto, Deputy Chief Robinson and Deputy Chief Venzon didn't agree with the female only training and refused to sign the required authorizing documents on the grounds that such female specific training was "sexist" towards men. Such arbitrary refusal to follow the direction of Chief Soto is further evidence of the open hostility towards the advancement of female officers and pervasive

1   culture of discrimination within the RPD.

2   **Sergeant for a Day**

3       41.    In April 2012, Conklin applied for the position of Sergeant with the RPD.

4       42.    In response to Conklin's application, numerous co-workers and supervisors, some

5   friendly and others hostile, warned Conklin that her efforts in making the application for Sergeant

6   were futile. One RPD official went as far as to warn Conklin, "you don't know your place," and

7   noted that a lesbian had no business applying for the position of RPD Sergeant.

8       43.    In spite of the opposition to her efforts, Conklin proceeded with the Sergeant

9   application process.

10       44.    Conklin took the Sergeant test and earned the highest placement score in her cohort

11   group. Additionally, Conklin achieved the highest score possible on the oral battery.

12       45.    In spite of Conklin's glaring qualifications for the position, RPD leadership,

13   including Evans, had decided to pass over her for Sergeant.

14       46.    In August 2012, Deputy Chief Tommy Robinson ("Robinson") informed Conklin

15   that Evans had been caught on tape making derogatory, homophobic remarks about her. The taped

16   conversations ultimately were disclosed to the general public, generating a highly publicized

17   scandal that forced Evans to resign his post. When the tapes were made public, this caused Conklin

18   humiliation and embarrassment when she had to tell her father that she was called derogatory

19   terms.

20       47.    Upon information and belief, because of the potential for continued bad press and

21   liability exposure, the RPD decided to promote Conklin to Sergeant on a probationary basis.

22   Conklin's promotion came on the same day as Evans' resignation. Upon information and belief,

23   but for the publication of Evans' statements, the RPD would not have authorized the promotion.

48.     At the same time Conklin was promoted, the RPD promoted a straight male officer, Brian Dye ("Dye"), with virtually identical credentials and Sergeant tenure as Conklin to the position.

49.     During Conklin's probational time as Sergeant she was given stellar performance reviews and supervisorial comments on her work include: "Laura continues to show steady growth as a probationary sergeant," "Laura is progressing well in her probationary period as a sergeant," "Laura continues to excel in the day to day management of her team," and "Sgt. Conklin has demonstrated the needed qualities of a supervisor of her tenure."

50.     During this same period of time, Conklin was nominated for "Sergeant of the Bid" by Lieutenant Burfield, her direct supervisor, because Conklin demonstrated exemplary performance and effort as a probationary Sergeant.

51.     In August 2013, Conklin was demoted from her Sergeant position after her alleged involvement in an illicit private sale of firearms while on duty. The officer promoted to Sergeant at the same time as Conklin, Dye, was also involved in the transaction; however, he was not demoted as a result.

52.     Contrary to what RPD supervisors expressed in Conklin's performance reviews and her 6-month BOE, the RPD maintains that the demotion from her Sergeant position was pursuant to unsatisfactory adjustment/performance, and not as a form of discipline.

53.     Following Conklin's demotion, she continued to be a frequent target for harassment and systemic discrimination through sexually-charged language and epithets, which have continued to the present time.

### Vindictive Behavior

54.     On August 9, 2016, Conklin was scheduled to testify in a homicide trial in the

1   United States District Court in Reno.

2       55.    A couple of weeks before the trial, Conklin received a phone call from the Reno

3   Deputy City Attorney Rob Boney ("Boney") stating that the defense had requested exculpatory

4   *Brady* evidence Conklin may have gathered at the crime scene. Boney told Conklin, "You didn't

5   have any *Brady* materials, but we did send the defense a letter stating you sold a gun while on

6   duty."

7       56.    Conklin's alleged sale of a gun on duty is in no way related to the probative

8   evidence of the underlying homicide trial.

9       57.    Boney is a subordinate of Reno City Attorney Karl Hall ("Hall").

10      58.    On information and belief, Hall instructed Boney to send the letter to defense

11  counsel in order to embarrass and undermine her and to limit her effectiveness as a Sergeant.

12               **CONDITIONS PRECEDENT TO FILING THIS ACTION**

13      59.    Plaintiff has satisfied all conditions precedent to initiating this action in that the

14  following three actions have occurred:

15      a.   Plaintiff timely filed charges of discrimination with the EEOC;

16      b.   The EEOC closed the case (See Right-to-Sue Letter, attached as "Exhbit 1"; and

17      c.   The U.S. Department of Justice Civil Rights Division issued a Right-to-Sue letter

18          to Plaintiff on July 31, 2017 and Plaintiff received the letter on March 6, 2018.

19      d.   Plaintiff has timely filed this action in this Court following receipt of the Right-to-

20          Sue letter from the U.S. Department of Justice Civil Rights Division.

21  / / /

22  / / /

23  / / /

LAURA CONKLIN v. CITY OF RENO, et al,
Case No.: Not Assigned

## FIRST CAUSE OF ACTION

**(Unlawful Employment Practices: Sex, Gender, and Sexual Orientation Discrimination)**

60.     Plaintiff re-alleges and incorporates by reference the allegations set forth in paragraphs 1-59 above as though fully set forth herein.

61.     Defendant City of Reno is an "employer(s)" as defined in Nev. Rev. Stat §613.310(2) and 42 U.S.C. 2000 *et. seq.*

62.     Defendant is, and at all times relevant to this action, was Conklin's employer and, as such, was barred from discriminating in employment decisions on the basis of sex, gender, or sexual orientation as set forth in NRS 613.330, *et seq.* and 42 U.S.C. 2000 *et. seq.*

63.     Plaintiff Conklin is a female and thus belongs to the class of individuals protected by Nev. Rev. Stat. §613.330 and 42 U.S.C. 2000e *et. seq.*

64.     Plaintiff Conklin had the qualifications necessary to adequately perform her job duties.

65.     Plaintiff Conklin was performing her job duties according to her employer's legitimate expectations.

66.     Under applicable laws cited herein, Defendant City of Reno, has the obligation to provide a workplace free of discrimination and harassment on the basis of sex, gender, and sexual orientation. Plaintiff has the same right to the full and equal benefit of the laws and proceedings for the security of persons and property as enjoyed by all employees.

67.     During the course of her employment, Conklin was subjected to discrimination, harassment, and differential treatment by Defendant City of Reno, its employees, management, agents, employees, and/or representatives, because of her sex and gender.

68.     Specifically, Conklin was discriminated against by way of disparate treatment between other male officers, inappropriate and sexist remarks by peers and supervisors, and the passing over for promotions on numerous occasions in favor of straight male applicants, despite her qualifications.

69.     The conduct of Defendant City of Reno described in this Complaint constitutes unlawful discrimination in violation of Nev. Rev. Stat. §613.330 and 42 U.S.C. 2000(e) *et. seq.*, i.e., discrimination and differential treatment on the basis of sex, gender, and sexual orientation.

70.     As a direct result of Defendant City of Reno's unlawful, discriminatory conduct, Conklin suffered financial harm and emotional distress. The above described acts of Defendant City of Reno were further made intentionally and done with a conscious disregard for Plaintiff's protected rights.

71.     Defendant City of Reno's conduct directly and proximately caused Conklin to suffer loss of wages, loss of earning capacity, and constructive loss of employment, as well as severe emotional and physical distress for which she is entitled to compensatory and punitive damages in excess of $10,000.00.

72.     As a result of Defendant City of Reno's conduct, Conklin has further been forced to retain and employ legal counsel and thus is entitled to all costs, fees and expenses related to or arising from this litigation.

## SECOND CAUSE OF ACTION

### (Violations of State and Federal Equal Protection Guarantees U.S.C. § 1983)

73.     Plaintiff re-alleges and incorporates by reference the allegations set forth in paragraphs 1- 72 above as though fully set forth herein.

LAURA CONKLIN v. CITY OF RENO, et al,
Case No.: Not Assigned

13

74.     Nev. Const. Art. 4, § 21 states that "...all laws shall be general and of uniform operation throughout the State."

75.     The standard for testing claims made under Nev. Const. Art. 4, § 21 is the same as under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. In re Candelaria, 245 P.3d 518, 523 (2010).

76.     Nevada looks to the federal equal protection clause for guidance on interpretation. Laakonen v. Eighth Judicial Dist. Ct., 538 P. 2d 574 (1975).

77.     Under the federal interpretation, an equal protection violation occurs when Defendants "acting under color of state law, discriminated against [Plaintiff] as members of an identifiable class and that the discrimination was intentional." Flores v. Morgan Hill Unified School Dist., 324 F.3d 1130, 1134 (9th Cir. 2010).

78.     169. "Equal Protection allows different classifications of treatment, but the classifications must be reasonable." Flamingo Paradise Gaming, LLC v, Chanos, 125 Nev. 502, 520, 217 P.3d 546, 558 (2009).

79.     Members of an identifiable class based on sexual orientation are protected from discrimination under the Equal Protection Clause. Id.

80.     As a state actor, Defendant City of Reno, has the obligation to provide a workplace free of discrimination and harassment on the basis of sex, gender, and sexual orientation. Plaintiff has the same right to the full and equal benefit of the laws and proceedings for the security of persons and property as enjoyed by all employees.

81.     Classifications on the basis of sexual orientation are subject to heightened scrutiny under the Equal Protection Clause. Latta v. Otter, 771 F.3d 456, 468 (9th Cir. 2014).

LAURA CONKLIN v. CITY OF RENO, et al,
Case No.: Not Assigned

82.   During the course of her employment, Conklin was subjected to discrimination, harassment, differential treatment, and a deprivation of rights by Defendant City of Reno, its employees, management, agents, employees, and/or representatives, on the basis of her sexual orientation.

83.   Specifically, Conklin was subjected to a deprivation of rights by way of disparate treatment between other male officers, inappropriate and sexist remarks by peers and supervisors, and the passing over for promotions on numerous occasions in favor of straight male applicants, despite her qualifications.

84.   On numerous and documented occasions, the City was notified as to the harassment and injuries endured by Conklin. However, the City by failing to address Conklin's complaints of harassment and discrimination on the basis of her sexual orientation and by issuing a "cease and desist" letter to prohibit Conklin from pursing such complaints, the City was deliberately indifferent to the reported harm suffered by Plaintiff and thus violated Conklin's rights.

85.   Because of such disparate treatment, the City violated Conklin's right to equal protection under both the Nevada and the United States Constitution, and 42 U.S.C. § 1983.

### THIRD CAUSE OF ACTION

### (Retaliation)

86.   Plaintiff re-alleges and incorporates by reference the allegations set forth in paragraphs 1-85 above as though fully set forth herein.

87.   Over Conklin's 20-year career with the City, Conklin engaged in legally protected conduct by filing complaints with RPD to address issues of harassment and discrimination on the basis of her sex, gender, and sexual orientation.

LAURA CONKLIN v. CITY OF RENO, et al,
Case No.: Not Assigned

88.     The City retaliated against Conklin in violation of Nev. Rev. Stat. §613.340 and 42 U.S.C § 2000e *et seq,* and Title VII of the Civil Rights Act, by taking adverse employment action against Conklin, because of Plaintiff's participation in and/or opposition to practices and/or actions of the City that are unlawful under all applicable laws cited herein.

89.     The City retaliated against Conklin because Conklin opposed that which she reasonably and in good faith believed to be unlawful discrimination and harassment in her employment, and also because she complained about said harassment and discrimination.

90.     The City's conduct directly and proximately caused Conklin to suffer loss of wages, loss of earning capacity, and  as severe emotional and physical distress for which she claims compensatory and punitive damages from Defendants.

91.     The City's actions were intentional, deliberate, willful, malicious. reckless and conducted in callous disregard for the harm caused to Conklin.

92.      Conklin is entitled to all legal and equitable remedies available under Nev. Rev. Stat. §613.340 and 42 U.S.C § 2000e *et seq,* and Title VII of the Civil Rights Act.

## FOURTH CAUSE OF ACTION

### (Hostile Work Environment)

93.     Plaintiff re-alleges and incorporates by reference the allegations set forth in paragraphs 1-92 above as though fully set forth herein.

94.     The City of Reno and its agents subjected Conklin to a hostile, intimidating, and offensive work environment by subjecting her to derogatory slurs, harassment derived from her sex, gender and sexual orientation, imposing arbitrary performance standards, initiating a campaign of retaliatory conduct against her, and by denying her promotional opportunities despite her qualifications.

95.     The City of Reno and its agents' harassment, hostile comments, intimidating work environment and adverse actions against Conklin occurred with frequency.

96.     The City of Reno and its agents' conduct was so severe and pervasive that it significantly altered the condition of Conklin's employment and affected her psychological well-being.

97.     In addition, the conduct was sufficiently severe and pervasive to create an abusive work environment, and unreasonably interfered with Conklin's work.

98.     The City of Reno and its agents further intentionally subjected Conklin to harassment and discriminatory conduct based on her sex, gender, and sexual orientation.

99.     As a direct and proximate result of the breach of its duties owed to Conklin to prevent such conduct, Defendant's agents, servants or employees' unlawfully and willfully subjected Conklin to discriminatory treatment and retaliation in violation of Nevada State Law.

100.    As a result of the City's conduct, Conklin has been damaged in an amount in excess of $10,000.00 and has lost wages in excess of $50,000.

101.    As a result of the City's discriminatory acts as alleged herein, Conklin is entitled to her attorneys' fees and costs of suit.

## FIFTH CAUSE OF ACTION

### (Negligent Training and Supervision)

102.    Plaintiff Conklin re-alleges and incorporates by reference the allegations set forth in paragraphs 1-101 above as though fully set forth herein.

103.    The City has a duty to properly train and supervise its employees, including insuring that employees comply with the laws prohibiting sex, gender, and sexual orientation discrimination.

104.   The City's duty to properly train and supervise extends to all persons in its employ.

105.   The City's behavior towards Conklin including, but not limited to: harassment on the basis of her sex, gender and sexual orientation; frequently being referred to in derogatory and inappropriate terms such as "cunt" and "dyke"; receiving disparaging comments about the propriety of a woman and/or lesbian serving as a police officer; and being denied her promotional opportunities based on her sex, gender and sexual orientation; have been extreme, outrageous and was at a minimum, negligent.

106.   The City of Reno was informed and aware of the unlawful and negligent actions of its employees through multiple complaints filed by Conklin over the course of her 20-year career.

107.   Despite being informed of the negligent and harassing conduct of its employees however, the City failed to take any action to protect Conklin's rights.

108.   In fact, not only did the City fail to take action to protect Conklin's rights, at one point the RPD issued Conklin a "cease and desist" order to stop discussing her complaints against Rinaldo

109.   The City failed to properly hire, train and supervise its agents, servants or employees herein with respect to retaliation, anti-discrimination laws and sexual harassment in the workplace, among other things when it allowed its employees to discriminate against Conklin based on her sex, gender, and sexual orientation.

110.   As a direct and proximate result of the breach of said duty, the City's agents, servants or employees' conduct against Conklin unlawfully and willfully subjected Conklin to discriminatory treatment and retaliation in violation of State Law.

111.   As a result of Defendant's conduct, Conklin is entitled damages in an amount in excess of $10,000.00 and has lost wages in excess of $50,000.

## JURY TRIAL DEMAND

Pursuant to the Federal Rules of Civil Procedure (FRCP) Rule 38, Plaintiff hereby demands a trial by jury as to all issues.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court grant the following relief:

A.     For an award of compensatory and punitive damages, including all wages and benefits Plaintiff would have received but for the violations, including but not limited to back pay, front pay, and pre-judgment interest;

B.     For an award of economic damages according to proof;

C.     Statutory damages as allowed by law;

C.     For an award of reasonable attorneys' fees, costs, and litigation expenses; and

D.     For such other relief as the Court or jury may deem just or equitable.

Dated this 4th day of June, 2018.                     HUTCHISON & STEFFEN, PLLC

By:    _____
JASON D. GUINASSO, ESQ.(#8478)
*Attorney for Plaintiff*

**<u>List of Exhibits</u>**
**Case No. (Not Yet Assigned)**
**Laura Conklin v. City of Reno, *et al.***
**COMPLAINT**

| Exhibit No. | Document | Page Count |
|---|---|---|
| Exhibit 1 | EEOC Right-to-Sue Letter with attached emails, and Affidavit of Scott Daniel | 4 |
| Exhibit 2 | Appeal of Denial of Grievance | 32 |
| Exhibit 3 | Sgt. Seniority List | 2 |
| Exhibit 4 | Evaluations and Recommendations | 50 |
| Exhibit 5 | Affidavit of Plaintiff Laura Conklin | 8 |

# EXHIBIT 1
## EEOC Right-to-Sue Letter
## With attached emails and Affidavit of Scott Daniel

# EXHIBIT 1

**DECLARATION OF SCOTT R. DANIEL**
**Pursuant to 28 U.S.C. 1746**

I, Scott R. Daniel, declare under penalty of perjury that the following is true and correct:

1.   I am over the age of eighteen and am competent to make this declaration.

2.   Between 2012 and 2017, I was a solo practitioner under the auspices of The Daniel Firm.

3.   My offices were located at 200 South Virginia Street, 8th Floor, Reno, Nevada 89509. I had a virtual office in the Regus executive suites, where I could use an office as needed and where the receptionists would take my mail and screen incoming calls. None of the Regus staff were under my employment at any time.

4.   In the summer of 2016, Laura Conklin retained me to represent her in a Title VII employment action against the Reno Police Department and the City of Reno, among other defendants.

5.   For the remainder of 2016 I was in correspondence with the San Francisco office of the EEOC concerning the securing of a right-to-sue letter for Ms. Conklin's case.

6.   Over the course of 2016-2017, my neurological health deteriorated to the point where I no longer deemed myself fit to practice law or handle cases on behalf of my clients.

7.   In the late spring of 2017, I closed my practice and exited my lease with Regus. I notified my clients, including Ms. Conklin, that they would need to seek new counsel.

8.   At no point prior to my office closure did I receive or come into possession of any right-to-sue letter for Ms. Conklin. As I was the only employee of The Daniel Firm, no other person would have been legally authorized to receive it.

I declare under penalty of perjury that the following is true and correct:

Executed on **the 1st of June, 2018.**


/s/ Scott R. Daniel
Declarant

Exhibit-1-0001

Attorney client-privileged communication redacted

Begin forwarded message:

**From:** SCOTT DOUGHTIE <SCOTT.DOUGHTIE@EEOC.GOV>
**Date:** March 7, 2018 at 8:25:56 AM PST
**To:** Laura <fairyprincesssparkleak@gmail.com>
**Subject: RE: Laura Conklin v. City of Reno Police Department - 550-2014-00384**

I'm sorry.  I don't have an email address for anyone there but I do have Karen Ferguson's phone number - (202) 514-2302 and a fax number - (202) 616-9743.

Good luck.

Scott Doughtie
Enforcement Supervisor
450 Golden Gate Avenue
Fifth Floor West
San Francisco, CA 94102
(415) 522-3179

**From:** Laura [mailto:fairyprincesssparkleak@gmail.com]
**Sent:** Wednesday, March 07, 2018 6:46 AM
**To:** SCOTT DOUGHTIE <SCOTT.DOUGHTIE@EEOC.GOV>
**Subject:** Re: Laura Conklin v. City of Reno Police Department - 550-2014-00384

Scott

Do you have an email address for someone at DOJ so I can verify that my attorney did not receive the certified letter?  Thank you

Laura

On Mar 6, 2018, at 10:13 AM, SCOTT DOUGHTIE <SCOTT.DOUGHTIE@EEOC.GOV> wrote:

Dear Ms. Conklin:

Please see the attached letter from the U.S. Department of Justice.

Sincerely,

Scott Doughtie

Exhibit-1-0002

Enforcement Supervisor
450 Golden Gate Avenue
Fifth Floor West
San Francisco, CA 94102
(415) 522-3179

<ConklinLaura.DOJNRTS.pdf>

Exhibit-1-0003



U.S. Department of Justice
Civil Rights Division
NOTICE OF RIGHT TO SUE WITHIN 90 DAYS

CERTIFIED MAIL
7003 0500 0002 5072 3750

*950 Pennsylvania Avenue, N.W.*
*Karen Ferguson , EMP, PHB, Room 4701*
*Washington, DC 20530*

July 31, 2017

Ms. Laura Conklin
c/o Scott R. Daniel, Esquire
The Daniel Firm
200 South Virginia Street
8th Floor
Reno, NV  89501

Re:  EEOC Charge Against City of Reno Police Dept.
    No. 550201400384

Dear Ms. Conklin:

    Because you filed the above charge with the Equal Employment Opportunity Commission, and more than 180 days have elapsed since the date the Commission assumed jurisdiction over the charge, and no suit based thereon has been filed by this Department, and because you through your attorney have specifically requested this Notice, you are hereby notified that you have the right to institute a civil action under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e, et seq., against the above-named respondent.

    If you choose to commence a civil action, such suit must be filed in the appropriate Court within 90 days of your receipt of this Notice.

    The investigative file pertaining to your case is located in the EEOC San Francisco District Office, San Francisco, CA.

    This Notice should not be taken to mean that the Department of Justice has made a judgment as to whether or not your case is meritorious.

                    Sincerely,

                    John M. Gore
                    Acting Assistant Attorney General
                    Civil Rights Division

                    by  *Karen L. Ferguson*
                    Karen L. Ferguson
                    Supervisory Civil Rights Analyst
                    Employment Litigation Section

cc: San Francisco District Office, EEOC
    City of Reno Police Dept.

Exhibit-1-0004

# EXHIBIT 2
## Appeal of Denial of Grievance

# EXHIBIT 2

Robert P. Fahrendorf
Thomas E. Viloria*
R. Shawn Oliphant
Raymond E. Oster
Nathan J. Aman

Roger S. Doyle*
Patrick R. Millsap
James J. Barnes
Christopher Hazlett-Stevens
*Also Admitted in CA

# FAHRENDORF,
# VILORIA,
# OLIPHANT
# & OSTER LLP.

ATTORNEYS
AND
COUNSELORS
AT LAW

Office: 775-348-9999
Fax:    775-348-0540
www.renonvlaw.com

Proud Supporter of:



September 6, 2013

*HAND DELIVERED*
Steven Pitts
Chief of Police
Reno Police Department
455 East Second Street
Post Office Box 1900
Reno, Nevada 89505

## APPEAL OF DENIAL OF GREIVANCE

Re:   Laura Conklin #5824
      RPSAEA Grievance re: Discrimination based on sex and demotion of 7/31/13
      August 27, 2013 RPD, Denial of Grievance
      September 4, 2013 RPD Denial of Grievance

Dear Chief Pitts:

Please consider this an Appeal of the denial of Ms. Conklin's grievance as identified in the September 4, 2013 memorandum authored by Commander Tom Robinson.

Initially, the implied assertion that Ms. Conklin has failed to follow the required grievance procedure is without merit. In particular, Article 27 (c) only applies if the matter is referred to the Association's Grievance Committee. Commander Shannon Wiecking's denial of grievance dated August 27, 2013 did not refer the matter to any Grievance Committee. Moreover, as of September 4, 2013, we have confirmed no such committee exists. Lastly, Ms. Conklin's August 29, 2013 Appeal of Grievance was hand served on Deputy Chief Tom Robinson.

In responding to the August 27, 2012 Appeal of Denial of Grievance, Mr. Robinson alleges, "[a]s you were previously informed, you were returned to your former position of Police Officer from probationary position of Sergeant because your adjustment to that probationary position was unsatisfactory." **This assertion is a falsehood.** At no time was Ms. Conklin informed that her adjustment was unsatisfactory. In fact, prior to the September 4, 2013 memorandum, Mr. Robinson refused to provide a basis for the demotion. In our meeting with Commander Wiecking on August 22, 2013 to discuss the grievance, Ms. Wiecking advised she was filling in for Mr. Robinson and at no time during that meeting did she inform Ms. Conklin that her performance was unsatisfactory.

Viloria-Chief Pitts Appeal of Grievance Decision

Exhibit-2-0001

September 6, 2013
Steven Pitts, Chief of Police
Reno Police Department
Page 2

As stated in the initial grievance RPSAEA member Laura Conklin, in accordance with Article 27, of the RPSAE collective bargaining agreement (CBA) alleged a grievance citing violations of Article 5, Non Discrimination and Article 31, Discipline Discharge.

In the August 22, 2013 recorded meeting with Commander Wiecking, Ms. Conklin and/or her counsel and/or Ron Dreher identified the factual and legal grounds in support of her grievance. In part, the factual and legal grounds are restated as follows:

1) No reason had been provided to Ms. Conklin to support her demotion and non-confirmation to Sergeant and Commander Robinson had refused to provide a reason;

2) On August 10, 2012 when she was initially promoted to Sergeant, Commander Robinson informed Ms. Conklin that she was going to be passed over for promotion, but because of her being called a "cunt" on tape by then Deputy Chief Dave Evans she had to be promoted;

3) RPD may only demote a probationary employee such as Ms. Conklin upon a showing of unsatisfactory performance, i.e. for cause. RPD failed to show Ms. Conklin's demotion was for cause and in fact had refused to provide any reason;

4) RPD and Ms. Conklin's immediate supervisors and commanding officers had failed to provide any basis for the demotion and Ms. Conklin was being discriminated against on the basis of her sex and sexual orientation which motivated RPD's decision to demote and not confirm Ms. Conklin as a Sergeant;

5) There is no rational ground to support the demotion and non-confirmation especially when considering Ms. Conklin's evaluations during her probationary period were exemplary and on June 8, 2013 she was nominated for Sergeant of the Bid. Copies of the Evaluations and the Sergeant of the Bid Memo are attached hereto as Exhibit 1;

6). If RPD is using Ms. Conklin's sale of a firearm while on duty as a basis for demotion and non-confirmation, this basis is discriminatory based on her sex and/or sexual orientation. Sgt. Brian Dye was at the scene and on duty with Ms. Conklin when the weapon was sold. He was acting as a cover officer. He was initially promoted to Sergeant on August 10, 2012. Ms Conklin was promoted that same day. There is no established procedure regarding the sale of firearms while on duty. However, firearms are routinely bought and sold by police officers while on duty, both at the range and through private sales listed in the RPD website RPD want ads. Moreover, it is commonplace and not unusual for officers to engage in personal business while on duty. Yet, Sgt. Dye was confirmed as Sergeant while Ms. Conklin was demoted; and

7) Ms. Conklin's circumstance is factually and legally similar to the facts and circumstances suffered by Joe Butterman's demotion from Sergeant to Patrolman while on probation as stated in *Reno Police Protective Association and Joseph C. Butterman v. City of Reno*, 102 Nev. 98, 715 P.2d 1321 (1986).. In *Butterman*, RPD used his cancellation of a case number assigned to a criminal report and failure to inform a supervisor of the victim's desire to file a criminal complaint as the basis for demotion. The Nevada Supreme Court noted: that it

Exhibit-2-0002

September 6, 2013
Steven Pitts, Chief of Police
Reno Police Department
Page 3

was not unusual to remove a case number and he had notified his supervisor of the cancellation; there was no established operating procedure in such situations; two days prior Butterman had received an exemplary job performance evaluation and since his promotion was "above average" in almost all respects. In reviewing these facts, the Nevada Supreme Court stated, "The City failed to demonstrate that Butterman's job performance was unsatisfactory and that the City demoted Butterman for a legitimate business reason. We conclude that the City failed to meet its burden of proof" *Butterman*, 102 Nev. at 102, 715 P.2d at 1324. The Court therefore held that the EMRB's decision was clearly erroneous and the District Court's decision upholding the challenged portion of the EMRB's decision was also clearly erroneous. *Id.* In so holding, the Nevada Supreme Court stated, "[w]e reverse the judgment of the district court and remand with instructions that Butterman be reinstated to the rank of Segeant and that he receive all salary and emoluments, including pension rights, due him...." *Id.*

In Ms. Conklin's case, there is no established procedure on the sale of firearms while on duty. In fact the department promotes the sale of firearms through the RPD want ads and range sales. It is commonplace for officers to conduct personal business while on duty. Ms. Conklin received exemplary performance evaluations and was nominated for Sergeant of the Bid. Similar to Butterman, RPD cannot show that Ms. Conklin's job performance was unsatisfactory and that she was demoted for a legitimate reason.

Ms. Conklin's grievance is based on sexual discrimination and sexual orientation which is a violation of Article 5 of the RPSAE contract. Article 31, Discipline/Discharge states in relevant part, that all discipline including demotion shall be for "just cause".

The governing provisions are:

## Article 5 NON-DISCRIMINATION:

Section C states, the provisions of this agreement shall be applied equally to all employees in the bargaining unit, without discrimination to age, sex, marital status, race, color, creed, national origin, sexual orientation or political affiliation.

## Article 31 DISCIPLINE AND DISCHARGE:

Section (a) states; that all discipline including a demotion shall be for just cause, and shall be imposed without unreasonable delay, subject only to the need for thorough investigation.

Section (b) states; that "just cause" for any discipline as defined hereafter, including discharge, is subject to appeal and review under the procedures below, expressly including final and binding arbitration.

Section (c) 1 states; The term "discipline" as used herein shall include discharge, demotion, suspension, and written reprimands.

Section (d) states in pertinent part; each regular employee that has been disciplined shall have the option of using the appeal procedures set out below, subject to the Association's right to be a

Exhibit-2-0003

September 6, 2013
Steven Pitts, Chief of Police
Reno Police Department
Page 4

participant in all arbitration proceedings, **or Civil Service remedies for reviewing the discipline imposed.**

Ms. Conklin has elected to use the grievance procedures of Article 27 instead of the Civil Service Remedies. The denial of her grievance and assertion that she is restricted to relief solely before the Civil Service Commission is misplaced.

Like *Butterman*, Ms. Conklin should be reinstated to the rank of Sergeant and she should receive all salary and emoluments, including pension rights, due her.

Pursuant to Article 27 (d), please contact me to arrange a mutually acceptable date and time to meet so that you may respond in writing within ten (10) days to the Grievance and Appeal of the Denial of Grievance.

Sincerely yours,

FAHRENDORF, VILORIA,
OLIPHANT & OSTER L.L.P.

Thomas E. Viloria, Esq.

Laura Conklin #5824

TEV: mk
Attachment
cc w/attachment:
    Al Snover, President RPSAEA
    Jason Soto
    Don Christensen, Esq.
    Deputy Chief Robinson
    Commander Shannon Wiecking

Exhibit-2-0004

EXHIBIT NO. I          DESCRIPTION

1.   Reno Police Department Employee Performance Comment Sheets Dated:
     November 9, 2012
     December 18, 2012
     January 12, 2013
     February 10, 2013
     April 15, 2013
     April 24, 2013
     June 23, 2013

2.   City of Reno Employee Performance Review Program CTR First Line Supervisor
     A Phase Evaluation Dated September 28, 2012

3.   City of Reno Employee Performance Review Program CTR First Line Supervisor
     Final Evaluation Dated November 9, 2012

4.   February 5, 2013 Memo from Keith Brown to Laura Conklin

5.   June 8, 2013 Sergeant of the Bid Memo from Lieutenant Joseph Burfield to
     Lieutenant Rob Van Diest

Exhibit-2-0005

1

Exhibit-2-0006



**RENO POLICE DEPARTMENT**
**Employee Performance Comment Sheet**

PAGE 1 OF 1

Date: November 9, 2012

Employee Name: Conklin, Laura      Employee ID#: 5824

Supervisor Name: Burfield, Joseph      Employee ID#: 1938

Monthly/Probationary ☒   Shift Rotation ☐   Exemplary ☐   Unsatisfactory ☐

**Narrative**

This performance comment sheet will cover Sgt. Conklin from the period of October 10, 2012 through November 10, 2012.

Sgt. Conklin was tasked to get officers to work a volunteer assignment involving a local fundraiser. I gave Sgt. Conklin the contact information and details of the assignment before I left for days off. Sgt. Conklin sent Commander Wiecking a follow-up e-mail asking what she should do with the request as she did not know about staffing. If Sgt. Conklin would have contacted the organizer of this event, she would have known how to accomplish this task. In speaking with Sgt. Conklin later, she admitted that she learned from this assignment and in the future would make the supervisory decision instead of asking the Commander. This was evident in a similar assignment where I had Sgt. Conklin get volunteers for an awards ceremony for Special Olympics. Not only did Sgt. Conklin make arrangements for officers to attend this event on her shift, she also took the initiative to staff the event the following day, without being asked.

Sgt. Conklin was advised that one of our family members was sick and might have cancer. Sgt. Conklin stayed informed, gave out the appropriate information to "PDEveryone" and took the extra step of arranging rides for this Officer during his Chemotherapy treatments. This is an excellent example of implementing one of the departments Guiding Principles, family enrichment, without being asked. Sgt. Conklin is a member of the ILP group and during this rating period attended a team meeting. Sgt. Conklin arranged for, and taught other officers, how to present ILP concepts as an after briefing training, department wide.

Sgt. Conklin is learning the blue team process as she encounters those situations. During this rating period, Sgt. Conklin completed an ADI on an Officer that failed to respond to directions. Sgt. Conklin completed this assignment in a timely manner and the ADI report was complete when it was sent up the chain to Lt. Rulla.

Sgt. Conklin has good time management, reviews her teams Tiburon reports, and follows up on assigned / required training. During this rating period, Sgt. Conklin completed two yearly evaluations prior to the due date. Sgt. Conklin is progressing well as a new supervisor.

**Performance Outcomes (if applicable)**

Sgt. Conklin is still learning how to be proactive with crime trends and utilizing her resources. For this reason, Sgt. Conklin will attend TCAR meetings for the next month and report what tools and resources she will utilize for crime trends during her shift. This information will be presented to me prior to her next monthly evaluation on 12-10-12.

I acknowledge receipt of this notice and understand the listed expectations. I also understand this information will be placed in my evaluation with notations on observed improvement

Conklin 5824    11/9/12          _(signature)_   1938

Exhibit-2-0007



**RENO POLICE DEPARTMENT**
**Employee Performance Comment Sheet**

PAGE 1 OF 1

Date: December 18, 2012

Employee Name: Conklin, Laura             Employee ID#: 5824

Supervisor Name: Burfield, Joseph          Employee ID#: 1938

Monthly/Probationary ☒  Shift Rotation ☐  Exemplary ☐  Unsatisfactory ☐

## Narrative

Sgt. Conklin continues to do a good job as a probationary Sergeant. During this rating period, there were no major incidents that Sgt. Conklin had to supervise but the day to day calls for service Sgt. Conklin handled were completed without incident. On November 14, 2012, Sgt. Conklin supervised a call that started out as a domestic battery call and ultimately resulted in a report involving a marijuana grow. Sgt. Conklin utilized her resources and called in Sgt. Chalmers to assist with the drug portion of the case and follow up for the outstanding suspect. On November 29, 2012, Sgt. Conklin was the supervisor in charge of a fatal single vehicle accident where the driver suffered a medical problem prior to the accident. Sgt. Conklin not only made the appropriate notifications for the department, she also made a notification to the property owner where the accident occurred. On December 8, 2012, Sgt. Conklin located a vehicle used in a BDW at the Sands Casino. Not only was this good police work, Sgt. Conklin quickly stepped into her primary responsibility as a supervisor and directed the coordinated effort of perimeter control and a contact team. The radio traffic was very good and others on scene or responding knew exactly what was expected of them.

Sgt. Conklin did not have to complete any Blue Teams this rating period but she did supervise a potential exposure of MRSA. Several officers, following up on a wanted person, came in contact with a person that had MRSA. Sgt. Conklin correctly handled this event and completed the proper paperwork.

During this rating period, Sgt. Conklin attended several meetings at the REOC in response to a possible flood downtown Reno November 30th. Sgt. Conklin did a good job passing on the pertinent information and learned that the City of Reno has a flood plan in place if this type of event were to occur again.

Sgt. Conklin took it upon herself to develop a plan to train officers in basic CSI. This plan was presented to the Lt. group and received positive feedback. The CSI training will start with the new group of officers in the academy.

## Performance Outcomes (if applicable)

Sgt. Conklin is an active member of the ILP guiding principle group. I would like to see Sgt. Conklin flex to CAO and work with Sgt. Bradshaw to see what the CAO's are doing for ILP and to possibly pass on new ideas to that unit. This should be accomplished prior to the next monthly evaluation if staffing needs can accommodate.

I acknowledge receipt of this notice and understand the listed expectations. I also understand this information will be placed in my evaluation with notations on observed improvement

Exhibit-2-0008



**RENO POLICE DEPARTMENT**
**Employee Performance Comment Sheet**

Date: January 12, 2013                                      PAGE 1 OF 1

Employee Name: Conklin, Laura                    Employee ID#: 5824

Supervisor Name: Burfield, Joseph               Employee ID#: 1938

Monthly/Probationary ☒   Shift Rotation ☐   Exemplary ☐   Unsatisfactory ☐

## Narrative

This performance comment sheet will cover Sgt. Conklin from the period of December 11, 2012 through January 10, 2013.

During this rating period, Sgt. Conklin has demonstrated the needed qualities of a supervisor of her tenure. On December 22, Sgt. Conklin supervised a fire call south of town. This fire was in the foothills of Rattle Snake Mountain and with the winds present that day, could have spread toward Donner Springs Elementary School. Several homes were also threatened by the wild fire. Sgt. Conklin utilized her resources correctly, made the proper notifications to residents to include a reverse 911, and coordinated with school police to shelter in place students or be prepared for an evacuation if needed. This call ran very smoothly at the direction of Sgt. Conklin.

Another call on December 22, involved a reported sexual assault where the victim and suspect were present. Sgt. Conklin made the appropriate decisions regarding evidence collection along with suspect and victim interviews. Sgt. Conklin used detectives as a resource when needed which resulted in this complex call being handled without incident.

During this rating period, Sgt. Conklin advised me of a minor accident where another officer's son was at fault in the accident. Sgt. Conklin made the proper notification to me in a timely manner. Sgt. Conklin did seek my advice as to citing the officer's son which we discussed. I advised Sgt. Conklin to take the relationship out of the equation and if the driver would be cited, then in this case, the driver should be cited. Sgt. Conklin agreed and made the correct decision.

Sgt. Conklin did not have any critical administrative paperwork during this rating period. All regular paperwork was completed in a timely manner and without error.

## Performance Outcomes (if applicable)

Sgt. Conklin is working on a new "ACI" type form that would help reduce the amount of time officers are busy with paperwork. This new form will utilize transcribers more cutting down on officers being unavailable for calls. I would like Sgt. Conklin to continue with these efforts and report back to me by February 8th, where this project stands.

I acknowledge receipt of this notice and understand the listed expectations. I also understand this information will be placed in my evaluation with notations on observed improvement

Exhibit-2-0009



**RENO POLICE DEPARTMENT**
**Employee Performance Comment Sheet**

PAGE 1 OF 1

Date: Feb. 10th, 2013

Employee Name:  Sgt. Laura Conklin                    Employee ID#: 5842

Supervisor Name: Lt. Keith Brown                     Employee ID#: 1516

Monthly/Probationary XXX☐   Shift Rotation ☐   Exemplary ☐   Unsatisfactory ☐

## Narrative
This evaluation is for the Month of January 2013.

Laura is progressing well through her probationary period.  She just completed her 6 month BOE and no major issues were noted.

Laura is engaged with the department and is enthused and eager to do a good job as a supervisor.  She has initiated several projects on her own to include developing a CSI class for the officers.  This has been very time consuming and she has had to use outside resources to help facilitate the class.

Laura is also in the process of developing a new report form.  She was encouraged to assign tasks like this out to her officers and then supervise the final product.  She did exactly that and is helping the assigned officer through the process.  She is meeting with supervisors in other divisions such as domestic advocates and the  Records division to make sure that all units have input before the final product is completed.  She has been very thorough in this process and is showing leadership and supervisory skills in bringing it to fruition.

She has had to deal with a probationary employee who while eager to do the job of a patrolman, is not eager or concerned with the administrative portion of this job.  She has been firm and direct with the officer and is giving him guidance as well as direction to help him meet his probationary terms.

Laura's call management is very good.  She is very adept at patrol and sees issues as or before they arise and is quick to come up with a course of action.  She is embracing ILP and is working with her officers to get their input and their ideas of how to better work existing crime trends.

Laura's briefings continue to be informative and "state of the art", as she uses the overhead projector to illuminate crime trends, suspect photos and pertinent info.  She is currently a model of what a briefing sergeant should be.

## Performance Outcomes (if applicable)
From her 6 month BOE, she was required to flex her schedule and work two days in the IA unit to better understand the IA process.  She just completed a week long assignment with CAO and gave a very informative, positive debrief of that unit and its mission.

Laura has two more guiding principal meetings yet to attend in the next six months.

I acknowledge receipt of this notice and understand the listed expectations.  I also understand this information will be placed in my evaluation with notations on observed improvement

ISA,      #5824                      Keith W Brown

Exhibit-2-0010



# RENO POLICE DEPARTMENT
## Employee Performance Comment Sheet

PAGE 1 OF 2

Date: April 15, 2013

Employee Name:  Sgt. Laura Conklin                    Employee ID#:  5842

Supervisor Name:  Lt. Keith Brown                     Employee ID#:  1516

Monthly/Probationary XXX☐   Shift Rotation ☐   Exemplary ☐   Unsatisfactory ☐

Narrative

This monthly evaluation covers the month of March 2013.

Laura is progressing well in her probationary period as a new sergeant. She is engaged with the department and the officers that she supervises. Currently she is managing two different projects that she hopes to bring to conclusion within the next month. The first being a new "Incident Crime sheet" and the second being a CSI class for patrol officers. Laura is finding that it is sometimes easier to do the work herself rather than bring subordinates into the process. I have encouraged her to utilize officers and guide them through process so as to develop them.

Laura has been working through two personnel issues with her officers. The first being the long term development and rehabilitation of a seasoned officer while also dealing with the poor attitude of a probationary officer. Laura has been on top of both issues and keeps me apprised of her actions and the progress she is making.

Laura continues to excel in the day to day management of her team. She is active and engaged with the on-scene management of calls for service and is complete and direct with her direction of case follow-up.

Laura's briefings are well composed and she disseminates pertinent information and crime trends.

Laura is demonstrating most if not all of the guiding principles. She has been the point of contact and friend to one of our sick officers. She has developed new training and forms that embrace problem solving and leadership. She is a driving member of the ILP focus group and demonstrates professionalism and leadership to her officers.

I acknowledge receipt of this notice and understand the listed expectations. I also understand this information will be placed in my evaluation with notations on observed improvement

Exhibit-2-0011



**RENO POLICE DEPARTMENT**
**Employee Performance Comment Sheet**

PAGE 1 OF 1

**Date:** April 24, 2013

**Employee Name:** Sgt. Laura Conklin          **Employee ID#:**5842

**Supervisor Name:** Lt Keith Brown          **Employee ID#:** 1516

Monthly/Probationary XXX☐   Shift Rotation ☐   Exemplary ☐   Unsatisfactory ☐

Narrative
        This evaluation cover the month of April 2013.
Laura is progressing well in her probationary period as a sergeant. During this month she assisted with the tactical control of a possible hostage situation on Melody drive. She had to be inserted into the EAT due to her experience with tactics. She organized the unit of officers and developed a tactical plan for them.

Laura has had to deal with two personnel issues this month. She currently has a probationary officer working for her who has shown signs of having a poor attitude towards administrative tasks. She identified these issues and discussed them with me. We decided that a BOE was the best course of action. She was prepared for the BOE and clearly stated her facts , what actions she had taken to improve the officer and gave recommendations to the BOE.

The second personnel issue involved an officer that may have failed to engage during a use of force. Laura has been working closely with the officer to build his self esteem and communication skills as he had previously been on a performance contract for those issues. Laura was quick to discuss the issue with me, gave recommendations on how she would like to handle the issue. She was on point with her recommendations and accepted my direction well. She will be reviewing the officers past use of force history to see if this is a reoccurring theme or a one time incident before developing a course of action to improve the officers performance.

Laura is administratively organized and has embraced our new Telestaff scheduling system so well that she instructs other supervisors. Her paperwork is complete and on time.

Laura's call management and on scene management is very good. She treats the public fairly when managing CFS and then organizes and directs her officers when on scene.

Performance Outcomes (if applicable)
        For the month of May Laura needs to finalize how she is going to handle the officer who did not engage, develop the performance contract and then implement it. Time is of the essence as this issue will extend into the next shift bid.

I acknowledge receipt of this notice and understand the listed expectations. I also understand this information will be placed in my evaluation with notations on observed improvement

Exhibit-2-0012



**RENO POLICE DEPARTMENT**
**Employee Performance Comment Sheet**

PAGE 1 OF 2

Date: June 23, 2013

Employee Name: Sgt. Laura Conklin          Employee ID#: 5824

Supervisor Name: Lt. Keith Brown           Employee ID#: 1516

Monthly/Probationary ☐XXX    Shift Rotation ☐    Exemplary ☐    Unsatisfactory ☐

Narrative

This evaluation is for the month of May and will include the first two weeks of June 2013.

Laura continues to show steady growth as a probationary sergeant. She excels at organization and problem solving. During this last month, Laura organized, scheduled and facilitated CSI training for not only all of the PTO's, but also numerous officers who wanted to become CSI qualified. She created this training when she was faced with the problem of not having photo or print qualified officers on her shift. She took the initiative to plan the training through FIS and then coordinated the purchase of the necessary equipment through our supply. Laura was faced with numerous scheduling issues as well as PTO officers who were reluctant to take the course. She handled all of the issues well.

Laura has also been working on a new TIC form that was born out of her first patrol teams idea to streamline our reporting process. The form took many months to create, refine and coordinate. Laura learned that while the form in concept would streamline patrols work, it affected other units outside of patrol. Again she worked well with other units to ultimately bring the form to fruition.

During the first weeks of May Laura dealt with the previously identified personnel issues. She accurately evaluated an officers use of force and spoke to that officer candidly about the perception that some officers had and then got his perspective of what had happened. She was able to mitigate a lot of the issues and did so in a manner that built the officer up instead of tearing him down.

Laura's second personnel issue involved a BOE for a probationary officer that ultimately ended with the officer being terminated. Laura had correctly identified several performance related issues that the employee was having. She accurately presented those facts to the BOE and presented herself well. After the BOE was concluded but before the final decision was made, Laura completed an evaluation on the same officer that painted a more positive picture of the employee. After the employee's termination, we discussed the importance of accurate meaningful evaluations. Several of the employee's performance issues were not mentioned in the written evaluation. Laura serves on a committee that is trying to reform our current evaluation method. We took the time to discuss whether our evaluation method is to blame or is it our candidness and accuracy that is too blame. Laura completed another officer's evaluation later in the month. This time I asked her to meet with that officer prior to the eval, get his input about strengths, weaknesses, career goals etc., prior to finishing his evaluation.

I acknowledge receipt of this notice and understand the listed expectations. I also understand this information will be placed in my evaluation with notations on observed improvement

_____  #5829          _____

Exhibit-2-0013



**RENO POLICE DEPARTMENT**
**Employee Performance Comment Sheet**

PAGE 2 OF 2

Date: June 23,2013

Employee Name: Sgt. Laura Conklin          Employee ID#:  5824

Supervisor Name: Lt. Keith Brown           Employee ID#: 1516

Monthly/Probationary ☐XXX   Shift Rotation ☐   Exemplary ☐   Unsatisfactory ☐

Performance Outcomes (If applicable)
Laura has been assigned to the graveyard shift for the remainder of her probation.  Laura should discuss evaluations with Lt. Burfield  , especially the recommendations that the evaluation committee has made.  Laura should then discuss with Lt. Burfield how she plans to incorporate these changes into her personal evaluation system.

I acknowledge receipt of this notice and understand the listed expectations.  I also understand this information will be placed in my evaluation with notations on observed improvement

Exhibit-2-0014

2

Exhibit-2-0015

CITY OF RENO EMPLOYEE PERFORMANCE REVIEW PROGRAM

## CTR

# First Line Supervisor

## A Phase Evaluation

Training Period __September 3-6, 2012__

Employee (print name)___ __Sgt Laura Conklin_____ ID# __5824__

Date of Evaluation____ __September 28, 2012__

Signature of Probationary Employee_____ ~~Lab #5824~~

Signature of PTS _____ ID# __4673__
Sgt Kim Bradshaw

Any area identified as being below universal standards, should have performance objectives
included to raise the level of performance to an acceptable level.

The information in this report documents the events that occurred during the
**Mid Term Evaluation** / Phase      A

---

**Personnel Issues:** Probationary Sergeants should demonstrate knowledge of
the processes and procedures available for handling personnel matters.  These
should include all issues involving subordinate employees and the steps
necessary in handling a difficult or insubordinate employee.  Timely and
immediate handling of identified problems should be considered in this
category.  Probationary Sergeants will demonstrate knowledge between
performance issues and disciplinary issues.  They will be able to identify
resources available to assist with personnel situations, and employee
development.

**PTS Comments:**

*Sergeant Conklin handled several personnel issues during
this rating period and demonstrated she had the knowledge
and desire to appropriately address personnel problems.
She effectively investigated two use of force incidents and
completed one CDS claim during this rating week.   She
needed very little assistance from me to appropriately
handle these tasks.*



Exhibit-2-0016

**Critical Incidents:** Probationary Sergeants should apply the role of the first line supervisor in directing and managing critical incidents. They should demonstrate tactical knowledge and leadership when dealing with these types of calls. This includes the management of resources, personnel and the ability to coordinate efforts with outside agencies and units.

**PTS Comments:**

*Sergeant Conklin did not handle a critical incident during this evaluation week. Although, we did discuss several critical incident scenarios and Sergeant Conklin demonstrated an understanding of her role in managing incidents as a front line supervisor.*

**Non-Critical Incidents:** Probationary Sergeants should identify the role of the street supervisor in directing and managing non-critical incidents. They should demonstrate an application of laws and policies and procedures associated with non-critical incidents.

**PTS Comments:**

*Sergeant Conklin consistently demonstrated a good knowledge of Department Policies and Procedures, criminal law, and civil liability while handling non-critical incidents throughout the week. She effectively supervised calls involving a missing Alzheimer's patient, an occupied, stolen vehicle which fled from Spark PD, an attempt to contact a suspect in a residential burglary with a missing firearm, and several death investigations. Sergeant Conklin had a good approach with officers on scene in properly supervising and obtaining necessary information without being overbearing.*

**Call Management:** Probationary Sergeants will recognize and respond effectively to issues associated with managing calls for service in the field. They must effectively evaluate and prioritize calls for service based upon available personnel, the urgency of the call for service, laws and departmental policy, and the need to provide service to the community.

**PTS Comments:**

*Sgt Conklin was able to demonstrate effective call management during this evaluation period. She updated her MDT screen on a regular basis to keep up to date on calls pending. She also kept track of the officers on her team and what calls they were on. She demonstrated her ability to identify risk on several calls, including holding a call of a wanted subject at the Peppermill while she obtained*

Exhibit-2-0017

*more information and then directed the officer as to her
expectations when he responded. Additionally, she
recognized the risks involving an out of state runaway and
appropriately assigned an officer to follow-up and then
briefed the Watch Commander.*

**Communications Skills:**   Probationary Sergeants will speak in a clear,
distinct and understandable manner. They must be effective in getting their
point of view across and be able to explain their actions before groups and in
one-on-one settings. The probationary sergeant will write in a clear and
concise manner. They will be able to summarize a set of facts or ideas and
present them in a written format so that they make sense on paper and are
understood by the reader. The first line supervisor will listen to people and
elicit further information if needed.

PTS Comments:

*Sergeant Conklin demonstrated the ability to communicate in
an understandable and clear manner during this rating
period. She demonstrated good command presence and a
professional demeanor during briefings and team meetings.
Sergeant Conklin's written products were completed at an
above standard level. Sergeant Conklin handled a phone
call from Lorraine Baldwinson, who is a frequent caller and
complainer to Internal Affairs. Sergeant Conklin showed
good professionalism and leadership in her communication
with Ms. Baldwinson and with Officer Phoenix who responded
to the call.*

**Leadership:**   Probationary Sergeants will effectively employ a variety of
leadership styles and strategies. Probationary Sergeants will apply
situational, transformational, authoritative and democratic leadership styles
as necessary. Probationary Sergeants should continue to develop their
effectiveness in technical and adaptive leadership challenges. Leadership
styles and strategies should include; sense of purpose, character and
integrity, ownership, role modeling and coaching.

PTS Comments:

*Sergeant Conklin showed effective leadership abilities
during this rating week. She demonstrated an understanding
of the various leadership styles and flexibility in her
approach with officers, supervisors, and citizens.
Sergeant Conklin responded to a young officer who had
stopped his first occupied stolen vehicle. She coached,
praised, and directed this officer effectively, but
differently than the officers on the team she was*

Exhibit 2-0018

supervising, who are primarily officers with over 20 years of experience.

**Self-Awareness:** Probationary Sergeants will effectively use the process of self-awareness to identify their strengths and weaknesses and as a leadership tool.

**PTS Comments:**

Sergeant Conklin demonstrated a good understanding of emotional intelligence during this rating period. She was appropriately self critical and confident in her ability to make decisions. She responded well to criticism and correctly self identified areas of improvement.

**Ethics:** Probationary Sergeants will define ethics as they pertain to the field supervisor. They will demonstrate sound ethical practices and assess these practices. The probationary sergeant will demonstrate balanced judgment and decision making.

**PTS Comments:**

Sergeant Conklin demonstrated an understanding of her ethical responsibilities as a supervisor during this rating period. She demonstrated a strong work ethic and desire to "model the way". She readily volunteered to handle a use of force involving 1st watch officers after the 1st watch sergeants had left and consistently handled reports for all three districts.

**Time Management:** Probationary Sergeants will develop a process for a personnel management system to include project and time skills. The process should include: recording of time, events, projects and personnel issues, managing time, events, projects and personnel issues and identifying unproductive demands and consolidating time, events, projects and personnel issues and looking for the inter-relationships. Probationary Sergeants will utilize advance planning as much as possible.

**PTS Comments:**

Two days of this evaluation period were relatively busy and Sgt. Conklin showed a good ability to multi-task and prioritize calls based upon risk. During one particular time period, she worked in the station writing a use of force and a cds report, while managing calls and multiple incidents over the radio.

Exhibit-2-0019

**Organizational Change:**      Probationary Sergeants will comprehend and assess organizational strategy/structure.  They will define their role in achieving organizational objectives.

**PTS Comments:**

*Sergeant Conklin demonstrated an understanding of department values and mission and her obligations to these in her role as a supervisor.  She has participated in the departments guiding principles group on Intelligence Led policing and did a good job of promoting crime fighting during her briefings.*

**Problem Solving Skills:**  Probationary sergeants will be able to isolate and identify problems, evaluate alternative courses of action and come to a logical decision.  They will demonstrate emotional intelligence in their decision-making process.  They will assess available options before taking action. The probationary sergeant will apply their problem solving knowledge to identified problems and enable peers and subordinates to exercise innovation with the process.

**PTS Comments:**

*Sergeant Conklin demonstrated good problem solving skills during this rating period.  She willingly located resources to obtain information and input and recognize alternative solutions to problems.*

**PTS Recommendation:**
Sgt Conklin satisfactorily demonstrated the Core Competencies for the Administrative (A) Phase of the PTS program.  As such, it is recommended that she be continued in the program and be assigned to the Operational (B) Phase of the PTS program.

Exhibit-2-0020

3

Exhibit-2-0021

CITY OF RENO EMPLOYEE PERFORMANCE REVIEW PROGRAM

## CTR

# First Line Supervisor

## Final Evaluation

Training Period  **September 28, October 2-4, 2012**

Employee (print name)  **Sgt. Laura Conklin**        ID#  **5824**

Date of Evaluation  **November 9, 2012**

Signature of Probationary Employee  _(signature)_  #5824

Signature of PTS  _(signature)_        ID#  **4673**
              Sgt Kim Bradshaw

Any area identified as being below universal standards, should have performance objectives included to raise the level of performance to an acceptable level.

The information in this report documents the events that occurred during:
**Final Evaluation**

**Personnel Issues:** Probationary Sergeants should demonstrate knowledge of the processes and procedures available for handling personnel matters. These should include all issues involving subordinate employees and the steps necessary in handling a difficult or insubordinate employee. Timely and immediate handling of identified problems should be considered in this category. Probationary Sergeants will demonstrate knowledge between performance issues and disciplinary issues. They will be able to identify resources available to assist with personnel situations, and employee development.

**PTS Comments:**

*Sergeant Conklin demonstrated an effective skill level and understanding of personnel issues during this rating period. She conducted a counseling/training session with two officers as a result of a Use of Force investigation she had conducted previously. She demonstrated good communication and rapport with the officers involved, with a appropriate balance between soliciting input and providing direction to the officers. Additionally, Sergeant Conklin participated in a formal interview with an Officer involved in a traffic accident and although, that*



Exhibit-2-0022

interview was very straightforward, we discussed differing
scenarios that could arise during these types of
interviews.

**Critical Incidents:** Probationary Sergeants should apply the role of the
first line supervisor in directing and managing critical incidents. They
should demonstrate tactical knowledge and leadership when dealing with these
types of calls. This includes the management of resources, personnel and the
ability to coordinate efforts with outside agencies and units.

**PTS Comments:**

*Sergeant Conklin effectively supervised the search for a
possibly armed, suicidal subject in the hills above Stead
during this rating period. She demonstrated the ability to
direct multiple resources, including RPD patrol and
detective personnel, on-duty SWAT officers, WCSO personnel,
RAVEN, and tactic REMSA personnel. She was effective in
leading the officers to a successful conclusion in which
the subject was detained without injury to officers,
citizens, or the subject. Sergeant Conklin displayed an
appropriate understanding of her various roles as a
supervisor, including lead tactician, coach, facilitator,
and risk manager. Sergeant Conklin was able to honestly
evaluate her performance after the incident including areas
of strengths and weaknesses.*

**Non-Critical Incidents:** Probationary Sergeants should identify the
role of the street supervisor in directing and managing non-critical incidents.
They should demonstrate an application of laws and policies and procedures
associated with non-critical incidents.

**PTS Comments:**

*Sergeant Conklin demonstrated effective supervisory skills
in responding to and handling non-critical incidents. She
demonstrated she understood her role as a first line
supervisor and effectively identified potential risks in
calls. Sergeant Conklin supervised officers response to a
possible armed home invasion with a shot fired near the
University while the First Lady was visiting the
University. Sergeant Conklin quickly made decisions and
provided direction when appropriate. She was very
effective at handling the initial response to the call,
although, she was effective at directing follow-up once the
call appeared to be less serious, we did discuss techniques
she could use to better direct resources after the scene
was stabilized. During this same call and a few others,*

Exhibit-2-0023

*Sergeant Conklin made appropriate decisions regarding Officers responding Code 3 and additionally, effective handled on-scene media requests.  As with any new supervisor, Sergeant Conklin did show areas in which she could improve.  After assisting an officer with a domestic violence call with children on-scene in which the officer only did a minimal investigation, I did caution Sergeant Conklin to establish her own standards on calls within the values and mission of the department and to not just accept the status quo on calls regardless of her tenure.*

**Call Management:**  Probationary Sergeants will recognize and respond effectively to issues associated with managing calls for service in the field. They must effectively evaluate and prioritize calls for service based upon available personnel, the urgency of the call for service, laws and departmental policy, and the need to provide service to the community.

PTS Comments:

*Sergeant Conklin was able to demonstrate effective call management during this evaluation period.  She updated her MDT screen on a regular basis to keep up to date on calls pending.  She also kept track of her team members and when the other shift sergeant was busy and required assistance. Sergeant Conklin's prior experience in detectives and as leader in Intelligence Led Policing (ILP) was apparent in her effective call management skills.  She demonstrated the ability to look at the bigger picture and make decisions which balanced the current needs of the department versus appropriate long-term solutions.*

**Communications Skills:**  Probationary Sergeants will speak in a clear, distinct and understandable manner.  They must be effective in getting their point of view across and be able to explain their actions before groups and in one-on-one settings.  The probationary sergeant will write in a clear and concise manner.  They will be able to summarize a set of facts or ideas and present them in a written format so that they make sense on paper and are understood by the reader.  The first line supervisor will listen to people and elicit further information if needed.

PTS Comments:

*Sergeant Conklin demonstrated effective communication skills during this rating period.  She conducted professional, efficient briefings directed at crime fighting.  On one occasion during this rating period a fellow sergeant took exception to Sergeant Conklin talking to his team members regarding ILP training without his knowledge.  The conversation with the Officers was limited*

Exhibit-2-0024

and Sergeant Conklin had planned on communication with her peers regarding the training, but showed good self awareness in identifying that she should have communicated with the sergeant prior to meeting with the officers on his team.

**Leadership:**    Probationary Sergeants will effectively employ a variety of leadership styles and strategies. Probationary Sergeants will apply situational, transformational, authoritative and democratic leadership styles as necessary. Probationary Sergeants should continue to develop their effectiveness in technical and adaptive leadership challenges. Leadership styles and strategies should include: sense of purpose, character and integrity, ownership, role modeling and coaching.

**PTS Comments:**

Sergeant Conklin demonstrated effective leadership skills during this rating period. One example of a call which demonstrated her leadership skills was a call involving a mentally ill complainant who had previously called Internal Affairs regarding the on-scene officer (R122720626). Sergeant Conklin responded promptly and obtained the crux of the call. She stood by as the officer was handling the call without micromanaging, but properly took over and ended the encounter when the complainant became extremely verbally abusive towards the officer.

**Self-Awareness:**    Probationary Sergeants will effectively use the process of self-awareness to identify their strengths and weaknesses and as a leadership tool.

**PTS Comments:**

Sergeant Conklin demonstrated an appropriate level of self-awareness during this rating period. Se was receptive and responsive to constructive criticism and effectively self assessed as has been described in previous categories.

**Ethics:**    Probationary Sergeants will define ethics as they pertain to the field supervisor. They will demonstrate sound ethical practices and assess these practices. The probationary sergeant will demonstrate balanced judgment and decision making.

**PTS Comments:**

Sergeant Conklin demonstrated sound ethical practices and an understanding of role modeling and influencing good ethical practices as a supervisor. She demonstrated a

Exhibit-2-0025

*strong work ethic and appreciation for her responsibilities as a supervisor.*

**Time Management:** Probationary Sergeants will develop a process for a personnel management system to include project and time skills. The process should include: recording of time, events, projects and personnel issues, managing time, events, projects and personnel issues and identifying unproductive demands and consolidating time, events, projects and personnel issues and looking for the inter-relationships. Probationary Sergeants will utilize advance planning as much as possible.

**PTS Comments:**

Sergeant Conklin demonstrated effective time-management skills during this rating period. She is very strong in this area, promptly prioritizing, delegating, and handling tasks without delay and with relative ease.

**Organizational Change:** Probationary Sergeants will comprehend and assess organizational strategy/structure. They will define their role in achieving organizational objectives.

**PTS Comments:**

*Sergeant Conklin demonstrated a strong commitment to comprehend, model, and lead organizational change during this evaluation week. She consistently role modeled crime fighting and community service values.*

*Sergeant Conklin and I discussed the strengths and weaknesses of her assigned team, most notably their experience as a strength and an apparent consistent lack of desire to engage in pro-active policing as a weakness, at length during this rating period. Sergeant Conklin demonstrated ample knowledge, skill, and leadership to effectively raise the production level of her team during the remainder of this patrol bid, her success is going to largely depend upon her ability to remain consistently motivated regardless of the obstacles she encounters.*

**Problem Solving Skills:** Probationary sergeants will be able to isolate and identify problems, evaluate alternative courses of action and come to a logical decision. They will demonstrate emotional intelligence in their decision-making process. They will assess available options before taking action. The probationary sergeant will apply their problem solving knowledge to identified problems and enable peers and subordinates to exercise innovation with the process.

**PTS Comments:**

Exhibit-2-0026

*Sergeant Conklin demonstrated effective problem solving
skills during this rating weak.  She displayed a good
understanding and willingness to identify and reach out to
appropriate resources.*

**Recommendation:**

Sergeant Conklin satisfactorily demonstrated the Core
competencies for the PTS program.  As such, she has
completed the Police Training Sergeant Program and it is
recommended that she be assigned to her own patrol team.

Exhibit-2-0027

4

Exhibit-2-0028

**From:** "Keith Brown" <BrownK@reno.gov>
**To:** "Laura Conklin" <ConklinL@reno.gov>
**Cc:** "Joseph Burfield" <BurfieldJ@reno.gov>
**Date:** 02/05/2013 04:01 PM
**Subject:** Your 6 month BOE

Laura;

Confirming our conversation from your six month BOE that we conducted on February 1st.

You are progressing well through your probationary period and are showing growth in both your knowledge and application of supervisory skills.

Going forward, you are demonstrating the ability to make decisions , problems solve and communicate your ideas and directions.  You are obviously self motivated and this was noted as a very positive trait for you.

We would like you to work on your delegation skills when it comes to assigning tasks out to your officers, instead of taking on the tasks yourself.  Additionally we would ask that you use your problem solving skills to help identify trends or issues that you would then assign out to your officers, with ILP in mind.

You are currently flexing into the CAO assignment for one week and we would ask that during the remaining six months of your probation, you attend one of each of the Guiding Principal meetings as well as flex into IA for two days.

Please let me know if you have any questions.

Keith

Exhibit-2-0029

5

Exhibit-2-0030



# RENO POLICE DEPARTMENT
*Your Police,*
*Our Community*

| MEMO |
| --- |

**DATE:**   06-08-13

**TO:**   Lieutenant Rob Van Diest

**FROM:**   Lieutenant Joseph Burfield

**SUBJECT:**   Sergeant Laura Conklin

Rob,

I am requesting that the Lieutenant group consider Sgt. Laura Conklin for Sergeant of the bid. Sgt. Conklin works for Lt. Brown but I have conferred with Kieth and he knows that I am making this nomination. Sgt. Conklin has two months left on probation and there are no known reasons why she would not complete probation and become a confirmed Sergeant. With that in mind, I hope our leadership team will consider Laura for Sgt. of the bid.

During this bid Sgt. Conklin has gone well above what is required of a person in her position. The reasons I will list below, come as self-initiated activities or ideas and not as the result of being directed by her Lieutenant.

Laura took it upon herself to work with the WCSO crime lab and facilitate department wide training in CSI. During her responsibilities as a patrol supervisor, Laura realized that many units were requesting "CSI" units to complete very basic tasks. This caused not only a delay in the primary unit becoming available for other calls for service but also tied up two units on what should be a single unit call. Laura made sure that supplies were available for officers completing this training. This self initiated idea has not only made officers better at their jobs, it has decreased the need for two units on a single person call. Many hours have been dedicated to organizing this training.

Sgt. Conklin, again looking to keep officers on the street and available more, has developed the "TICS" form which is loosely related to the old "ACI" form that was utilized before Tiburon. This form is being tested and changed as officers utilize the form in the field. Laura's plan is that most basic reports can be transcribe and entered into Tiburon without the officer doing the data entry and enabling them to be on the street more. This new form has been received well by the officers.

During this bid, Sgt. Conklin remained very active in the ILP group and helped facilitate training to the different shifts regarding ILP.

*Revised 3/09*

Exhibit-2-0031

Lastly I would like to mention all the hours Laura has spent taking care of one of our family members.   When Laura learned of Officer Sorenson's cancer diagnosis, she immediately began helping Scott.   Laura arranged/planned for people to visit Scott during his treatments, to bring Scott food during his recovery, and helped keep our RPD family up to date on Scott's progress.  Again, this was not something assigned to Laura to do, but something she saw as important to the department and she has been a huge help to Scott, dealing with this awful diagnosis.

Thank you for your consideration of Sergeant Laura Conklin for Sergeant of the bid.

Joe Burfield

Exhibit-2-0032

# EXHIBIT 3
## Sgt. Seniority List

# EXHIBIT 3

# *Seniority List – Sergeants Years of Service*

| Name | Seniority Rank | Seniority | Hire Date | Officer Date | Sgt Date | Yrs |
|------|---------------|-----------|-----------|--------------|----------|-----|
| Tarter, John # (#02064) | Master Sgt 6/2014, SSgt | 915 | 01/30/89 | 01/30/89 | 09/24/01 | 25 |
| Parker, Nate # (#04680) | SSgt 6/14/12 | 918 | 01/12/96 | 01/12/96 | 06/14/02 | 18 |
| Myers, Wesley # (#02493) | | 933 | 01/29/90 | 01/29/90 | 07/23/04 | 24 |
| Mandagaran, John # (#02054) | | 936 | 01/30/89 | 01/30/89 | 12/10/04 | 25 |
| Salter, Alan # (#04682) | | 938 | 01/12/96 | 01/12/96 | 09/07/05 | 18 |
| Snover, Albert # (#04488) | | 941 | 08/11/95 | 08/11/95 | 01/06/06 | 18 |
| Sevcsik, Paul # (#04218) | | 943 | 01/12/95 | 01/12/95 | 05/26/06 | 19 |
| Becker, James # (#06645) | | 944 | 11/12/99 | 03/06/00 | 05/26/06 | 14 |
| Harmon, Kenneth # (#04677) | | 946 | 01/12/96 | 01/12/96 | 12/29/06 | 18 |
| Leyva, Ernesto # (#04041) | | 947 | 08/19/94 | 08/19/94 | 05/11/07 | 19 |
| Garlock, Sean # (#04481) | | 949 | 08/11/95 | 08/11/95 | 11/02/07 | 18 |
| Sifre, Paul # (#07087) | | 951 | 08/11/00 | 11/22/00 | 01/18/08 | 13 |
| Ayala, Rick # (#04199) | | 952 | 01/12/95 | 01/12/95 | 01/18/08 | 19 |
| Palmer, Colby # (#04970) | | 954 | 08/09/96 | 08/09/96 | 06/13/08 | 17 |
| Lopez, Marcia # (#04987) | | 955 | 08/09/96 | 08/09/96 | 06/27/08 | 17 |
| Blair, Greg # (#01842) | | 958 | 07/28/88 | 07/28/88 | 08/14/09 | 25 |
| Adamson, Brian # (#07873) | | 961 | 11/20/01 | 11/20/01 | 09/03/10 | 12 |
| Robinson, Joseph # (#08873) | | 962 | 09/29/03 | 09/29/03 | 01/14/11 | 10 |
| Mason, Roya # (#04479) | | 963 | 08/11/95 | 08/11/95 | 03/04/11 | 18 |
| Chalmers, Ron # (#04202) | Master Officer 5/06 | 965 | 01/12/95 | 01/12/95 | 03/25/11 | 19 |
| Shaw, Scott # (#06646) | | 966 | 11/12/99 | 03/06/00 | 03/25/11 | 14 |
| Adamson, Paul # (#02421) | | 967 | 12/04/89 | 01/10/97 | 03/25/11 | 24 |
| Lahren, Chad # (#06765) | | 968 | 03/17/00 | 07/03/00 | 06/17/11 | 14 |
| Browett, Michael # (#10164) | | 969 | 09/02/05 | 01/13/06 | 06/17/11 | 8 |
| Thew, Zack # (#05266) | | 971 | 08/11/00 | 11/22/00 | 07/15/11 | 13 |
| Carter, Andy # (#07920) | *M e* | 974 | 01/11/02 | 04/22/02 | 05/18/12 | 12 |
| Dye, Brian # (#08530) | | 976 | 03/17/03 | 06/20/03 | 08/10/12 | 11 |
| Johnson, Trenton # (#09476) | | 977 | 08/13/04 | 12/16/04 | 09/21/12 | 9 |
| Myers, KC # (#07924) | | 978 | 01/11/02 | 04/22/02 | 10/19/12 | 12 |
| Thompson, Daniel # (#05989) | | 979 | 08/14/98 | 08/14/98 | 11/02/12 | 15 |
| Lever, Joseph # (#05712) | Master Officer 4/11 | 980 | 01/16/98 | 01/16/98 | 03/08/13 | 16 |
| Lampert, Curtis # (#04484) | | 981 | 08/11/95 | 08/11/95 | 03/15/13 | 18 |
| Stroshine, Eric # (#04221) | Master Officer 11/07 | 982 | 01/12/95 | 01/12/95 | 04/05/13 | 19 |
| Silver, John # (#08159) | | 983 | 03/12/04 | 07/09/04 | 04/12/13 | 10 |
| Elges, Anthony # (#08846) | | 984 | 09/05/03 | 09/05/03 | 08/23/13 | 10 |
| Clark Jr., Jerry (Wade) # | | 985 | 02/04/05 | 06/09/05 | 02/07/14 | 9 |
| Smith, Scott D # (#04971) | | 986 | 08/09/96 | 08/09/96 | 05/02/14 | 17 |

*Printed 6/16/2014*

Exhibit-3-0001

## *Seniority List – Sergeants Years of Service*

| Name | Seniority Rank | Seniority | Hire Date | Officer Date | Sgt Date | Yrs |
|------|----------------|-----------|-----------|--------------|----------|-----|
| Hanifan, Robert # (#08877) | | 987 | 09/29/03 | 09/29/03 | 06/06/14 | 10 |

Exhibit-3-0002

# EXHIBIT 4
## Evaluations and Recommendations

# EXHIBIT 4





**RENO POLICE DEPARTMENT**
Internal Affairs Unit
Memorandum

DATE:       September 9, 2013

TO:         Laura Conklin #5824

FROM:       Lt. Robert Larson

SUBJECT:    **Notice of Documented Oral Counseling**

---

Employee Name: Laura Conklin #5824                    Case #: IA2013-0001

The Disciplinary Review Board reviewed this matter on: **August 28, 2013**

The Review Board agrees with the Administrative Investigative finding: **Sustained**

The Review Board's disciplinary recommendation: **Documented Oral Counseling**

**From Chief Steve Pitts:**                           Date: September 5, 2013

I have reviewed the report,

☒ I agree with the Review Board Recommendation

☐ I modify the recommendation to:

---

The allegation investigated in this case was found to be sustained.  The corrective action deemed to be appropriate by the Discipline Review Board and affirmed by the Chief of Police is **Documented Oral Counseling.**

Consequences of continued sustained allegations of the same or of a similar nature shall warrant disciplinary action.

The Department and NRS provides the right for each employee who receives an unfavorable comment or document to submit a written response within 30 days from the date of this notice, which will be permanently attached to this document.

Service of a copy of the foregoing is hereby acknowledged this _16Th_ day of _September_, 2013.

_____
Signature of Employee

_____ 4199
Served By

ORIG. TO IA 9-16-13
COPIES TO Employee

Cc:     Divisional Personnel File
        Departmental Personnel File
        Employee
        RPPA Board / RPSAE Board

Exhibit-4-0001

8/11/13 11:02 AM

City of Reno – Class Specification Bulletin      



# Police Sergeant

Class Code: 7555

Bargaining Unit: Reno Police Administrative Employees

CITY OF RENO
Revision Date: Mar 27, 2013

## SALARY RANGE

$41.62 - $48.02 Hourly
$7,214.89 - $8,322.84 Monthly
$86,578.72 - $99,874.05 Annually

## CLASSIFICATION DESCRIPTION SUMMARY:

Under general supervision, is responsible for supervisory police work of average difficulty, commanding or assisting in the command of a team or unit; and performs related work as required.

## DISTINGUISHING CHARACTERISTICS

A Police Sergeant supervises, assigns, reviews and participates in the work of law enforcement staff responsible for providing traffic and field patrol, investigations, crime prevention, community relations, training and/or related services and activities; acts as a watch commander as assigned; ensures work quality and adherence to established policies and procedures; participates in community based police activities and programs; performs a variety of technical and administrative tasks in support of law enforcement services and activities; and performs related work as required.

## ESSENTIAL FUNCTIONS:

*The following duties are typical for this classification. Incumbents may not perform all of the listed duties and/or may be required to perform additional or different duties from those set forth below to address business needs and changing business practices.*

Plan, coordinate, prioritize, assign, supervise, review, and participate in the work of personnel on an assigned shift.

Participate in administration of the department's budget, as well as grant allocations; submit recommendations; monitor expenditures; participate in other administrative functions as assigned.

Monitor work activities to ensure compliance with established policies and procedures; participate in the development of policies and procedures; make recommendations for changes and improvements to existing policies and procedures.

Conduct periodic staff (personnel inspections) and equipment inspections.

Act as a liaison with other outside agencies, the public, and between management and

Exhibit-4-0002

8/11/13 11:02 AM

City of Reno — Class Specification Bulletin

 

subordinate personnel.

Contact and coordinate with other law enforcement agencies in matters relating to the investigation of crimes and the apprehension of offenders, disaster preparedness, training, and information systems and police program management.

Build and maintain positive working relationships with co-workers, other City employees and the public.

Anticipate libelous situations; reduce or eliminate civil exposure.

Answer questions from the public concerning local and state laws, procedures, and activities of the department; participate in community meetings, including oral presentations.

Train and evaluate assigned personnel; provide training, guidance, and counseling to assigned personnel; complete employee performance evaluations and review as required; promote career development of staff.

Participate in all normal shift activities as assigned, including enforcing local and state laws, issuing citations, making arrests, administering first aid; responding to hazardous materials incidents and complete necessary forms.

Prepare regular and special reports.

Coordinate and supervise special programs or projects as assigned.

May be assigned a variety of administrative duties related to background and internal affairs investigations.

Supervise and assist subordinates in follow-up investigations, including the gathering of evidence, questioning of witnesses, and apprehension of suspects.

Supervise and participate in the preparation of reports for various cases, including cases going to trial; prepare supplemental reports as required; appear in court to present evidence and testimony as required.

May coordinate the activities of sworn and civilian personnel in planning for and dealing with emergency and hazardous situations.

Other assigned activities by the Chief of Police, Deputy Chief, Commander or Police Lieutenant.

Enforces departmental policies and procedures within scope of authority.

**MINIMUM QUALIFICATIONS:**
*The following generally describes the knowledge and ability required to enter the job and/or be learned within a short period of time in order to successfully perform the assigned duties.*

**Knowledge of:**

Modern police methods and procedures, including patrol, crime prevention, traffic control, and investigation.
Pertinent federal, state, and local laws, codes and regulations, including laws governing the

http://agency.governmentjobs.com/reno/default.cfm?action=specbulletin&ClassSpecID=45156&headerfooter=0

Exhibit-4-0003

City of Reno -- Class Specification Bulletin  

apprehension, arrest, and custody of persons accused of felonies and misdemeanors.
Rules of evidence pertaining to search and seizure and preservation of evidence.
Techniques and applications of self defense and proper use of force.
Use, operation, and maintenance of police equipment (including standard broadcasting
procedures of a police radio system), vehicles, and tools (including firearms).
Proficient understanding of and ability to use computers and supporting applications.
Principles and techniques used in public relations, including techniques and principles of
effective interpersonal communication.
English usage, spelling, grammar, and punctuation, including principles of business letter
writing and basic report preparation.
Principals and practices of personnel deployment, supervision, training, and performance
evaluation.

**Ability to:**

Supervise, organize, schedule, evaluate, train and review work of assigned staff.
Gather, assemble, analyze, evaluate, and use facts and evidence.
Utilize mental capacity allowing the capability of exercising sound judgment and rational
thinking under dangerous and stressful conditions.
Interpret, apply, and make decisions in accordance with applicable federal, state and local
policies, laws and regulations.
Interpret and explain City law enforcement policies and procedures.
Utilize problem-solving techniques to increase effectiveness; identify and generate "a better
way of doing things" by viewing issues or problems as opportunities for improvement rather
than as obstacles.
Think clearly and act quickly in a variety of situations.
Perform the full range of law enforcement assignments.
Communicate clearly and concisely both orally and in writing, including preparing clear and
concise reports and routine correspondence.
Engage tactfully and courteously with the public and law enforcement personnel; demonstrate
a high ability to interact with the public courteously, with patience and a positive attitude.
Maintain contact and preserve good relations with the public; respond to requests and
inquiries from the general public in a timely manner.
Thrive in a team environment that encourages cooperation, communication, and mutual
sharing of risk, responsibility, and reward.

**Education and Experience Guidelines** - *Any combination of education and experience that
would likely provide the required knowledge and abilities is qualifying. A typical way to obtain
the knowledge and abilities would be:*

**Education/Training:**

Graduation from high school or GED.

**Experience:**

Five years as a confirmed Police Officer in the Reno Police Department.

**License or Certificate:**

Possession of an appropriate, valid driver's license.

Exhibit-4-0004

City of Reno – Class Specification Bulletin

 

## PHYSICAL DEMANDS AND WORKING ENVIRONMENT

*The conditions herein are representative of those that must be met by an employee to successfully perform the essential functions of this job. Reasonable accommodations may be made to enable individuals with disabilities to perform the essential job functions.*

**Environment:** Work is performed primarily in a field and office environment; travel to different sites; exposure to inclement weather conditions, noise, dust, fumes, and gases; exposure to irate and abusive individuals; exposure to mechanical hazards and to hazardous traffic conditions; work and/or walk on various types of surfaces including slippery or uneven surfaces and rough terrain.

**Physical:** Primary functions require sufficient physical ability and mobility to work in a field and office setting; to travel to various locations to respond to emergency and non-emergency situations; to walk or sit for prolonged periods of time; to lift, carry, push, and/or pull light to moderate amounts of weight; to operate a motor vehicle or other mode of transportation, office equipment requiring repetitive hand movement and fine coordination including use of a computer keyboard; to operate assigned equipment; and to verbally communicate to communicate and exchange information.

## SUPPLEMENTAL INFORMATION:

RPSAE
SUPERVISORY UNIT

Last Update: March 2013
*Human Resources Department*

Exhibit-4-0005

 

### APPENDIX B-1

### SALARY SCHEDULE FOR
### THE RENO POLICE SUPERVISORY AND ADMINISTRATIVE EMPLOYEES ASSOCIATION

### SUPERVISORY UNIT
### (SERGEANTS)

### FROM THE FIRST FULL PAY PERIOD IN JULY 2011 THROUGH JUNE 2013

| CLASSIFICATION TITLE | 1st year LEVEL I | 2nd year LEVEL II | 6th year LEVEL III | |
|---|---|---|---|---|
| Sergeant | 41.6244 | 45.2984 | 48.0164 | Hourly Rate |
| | 3,329.95 | 3,623.87 | 3,841.31 | Bi-Weekly |
| | 86,578.72 | 94,220.60 | 99,874.05 | Annual |

50

Exhibit-4-0006

 

APPENDIX B-1

SALARY SCHEDULE FOR
THE RENO POLICE SUPERVISORY AND ADMINISTRATIVE EMPLOYEES ASSOCIATION

ADMINISTRATIVE SUPERVISORY UNIT
(LIEUTENANTS)

FROM THE FIRST FULL PAY PERIOD IN JULY 2011 THROUGH JUNE 2013

| CLASSIFICATION TITLE | 1st Year LEVEL I | 2nd Year LEVEL II | Lt.Commander | |
|---|---|---|---|---|
| Lieutenant | 56.5153 | 59.1562 | 68.3253 | Hourly Rate |
| | 4,521.22 | 4,732.49 | 5,466.03 | Bi-Weekly |
| | 117,551.78 | 123,044.82 | 142,116.68 | Annual |

47

Exhibit-4-0007



**RENO POLICE DEPARTMENT**
**Employee Performance Comment Sheet**

PAGE 1 OF 2

**Date:** June 23,2013

**Employee Name: Sgt. Laura Conklin**          **Employee ID#: 5824**

**Supervisor Name: Lt. Keith Brown**          **Employee ID#: 1516**

Monthly/Probationary ☐XXX   Shift Rotation ☐   Exemplary ☐   Unsatisfactory ☐

<u>Narrative</u>
This evaluation is for the month of May and will include the first two weeks of June 2013.

Laura continues to show steady growth as a probationary sergeant. She excels at organization and problem solving. During this last month, Laura organized, scheduled and facilitated CSI training for not only all of the PTO's, but also numerous officers who wanted to become CSI qualified. She created this training when she was faced with the problem of not having photo or print qualified officers on her shift. She took the initiative to plan the training through FIS and then coordinated the purchase of the necessary equipment through our supply. Laura was faced with numerous scheduling issues as well as PTO officers who were reluctant to take the course. She handled all of the issues well.

Laura has also been working on a new TIC form that was born out of her first patrol teams idea to streamline our reporting process. The form took many months to create, refine and coordinate. Laura learned that while the form in concept would streamline patrols work, it affected other units outside of patrol. Again she worked well with other units to ultimately bring the form to fruition.

During the first weeks of May Laura dealt with the previously identified personnel issues. She accurately evaluated an officers use of force and spoke to that officer candidly about the perception that some officers had and then got his perspective of what had happened. She was able to mitigate a lot of the issues and did so in a manner that built the officer up instead of tearing him down.

Laura's second personnel issue involved a BOE for a probationary officer that ultimately ended with the officer being terminated. Laura had correctly identified several performance related issues that the employee was having. She accurately presented those facts to the BOE and presented herself well. After the BOE was concluded but before the final decision was made, Laura completed an evaluation on the same officer that painted a more positive picture of the employee. After the employee's termination, we discussed the importance of accurate meaningful evaluations. Several of the employee's performance issues were not mentioned in the written evaluation. Laura serves on a committee that is trying to reform our current evaluation method. We took the time to discuss whether our evaluation method is to blame or is it our candidness and accuracy that is too blame. Laura completed another officer's evaluation later in the month. This time I asked her to meet with that officer prior to the eval, get his input about strengths, weaknesses, career goals etc., prior to finishing his evaluation.

I acknowledge receipt of this notice and understand the listed expectations. I also understand this information will be placed in my evaluation with notations on observed improvement

_____ #5829          _____
                                        Supervisor Signature

Exhibit-4-0008



**RENO POLICE DEPARTMENT**
**Employee Performance Comment Sheet**

**Date:** June 23, 2013                                                                    **PAGE 2 OF 2**

**Employee Name:** Sgt. Laura Conklin                          **Employee ID#:** 5824

**Supervisor Name:** Lt. Keith Brown                            **Employee ID#:** 1516

    **Monthly/Probationary** ☐XXX    **Shift Rotation** ☐    **Exemplary** ☐    **Unsatisfactory** ☐

Performance Outcomes (if applicable)
Laura has been assigned to the graveyard shift for the remainder of her probation.  Laura should discuss evaluations with Lt. Burfield , especially the recommendations that the evaluation committee has made.  Laura should then discuss with Lt. Burfield how she plans to incorporate these changes into her personal evaluation system.

I acknowledge receipt of this notice and understand the listed expectations.  I also understand this information will be placed in my evaluation with notations on observed improvement

_____                                    _____
Employee Signature                                                    Supervisor Signature

Exhibit-4-0009



**RENO POLICE DEPARTMENT**
**Employee Performance Comment Sheet**

**Date:** April 24, 2013

PAGE 1 OF 1

**Employee Name: Sgt. Laura Conklin**

**Employee ID#:5842**

**Supervisor Name:  Lt Keith Brown**

**Employee ID#: 1516**

Monthly/Probationary XXX☐    Shift Rotation ☐    Exemplary ☐   Unsatisfactory ☐

<u>Narrative</u>
  This evaluation cover the month of April 2013.
Laura is progressing well in her probationary period as a sergeant.  During this month she assisted with the tactical control of a possible hostage situation on Melody drive.  She had to be inserted into the EAT due to her experience with tactics.  She organized the unit of officers and developed a tactical plan for them.

Laura has had to deal with two personnel issues this month.  She currently has a probationary officer working for her who has shown signs of having a poor attitude towards administrative tasks.  She identified these issues and discussed them with me.  We decided that a BOE was the best course of action.  She was prepared for the BOE and clearly stated her facts , what actions she had taken to improve the officer and gave recommendations to the BOE.

The second personnel issue involved an officer that may have failed to engage during a use of force.  Laura has been working closely with the officer to build his self esteem and communication skills as he had previously been on a performance contract for those issues.  Laura was quick to discuss the issue with me, gave recommendations on how she would like to handle the issue.  She was on point with her recommendations and accepted my direction well.  She will be reviewing the officers past use of force history to see if this is a reoccurring theme or a one time incident before developing a course of action to improve the officers performance.

Laura is administratively organized and has embraced our new Telestaff scheduling system so well that she instructs other supervisors.  Her paperwork is complete and on time.

Laura's call management and on scene management is very good.  She treats the public fairly when managing CFS and then organizes and directs her officers when on scene.

<u>Performance Outcomes (if applicable)</u>
  For the month of May Laura needs to finalize how she is going to handle the officer who did not engage, develop the performance contract and then implement it.  Time is of the essence as this issue will extend into the next shift bid.

I acknowledge receipt of this notice and understand the listed expectations.  I also understand this information will be placed in my evaluation with notations on observed improvement

\#5824

Supervisor Signature

Exhibit-4-0010



**RENO POLICE DEPARTMENT**
**Employee Performance Comment Sheet**

PAGE 1 OF 2

Date: April 15, 2013

Employee Name:  Sgt. Laura Conklin          Employee ID#: 5842

Supervisor Name: Lt. Keith Brown          Employee ID#: 1516

Monthly/Probationary XXX☐   Shift Rotation ☐   Exemplary ☐   Unsatisfactory ☐

Narrative

This monthly evaluation covers the month of March 2013.

Laura is progressing well in her probationary period as a new sergeant. She is engaged with the department and the officers that she supervises. Currently she is managing two different projects that she hopes to bring to conclusion within the next month. The first being a new "Incident Crime sheet" and the second being a CSI class for patrol officers. Laura is finding that it is sometimes easier to do the work herself rather than bring subordinates into the process. I have encouraged her to utilize officers and guide them through process so as to develop them.

Laura has been working through two personnel issues with her officers. The first being the long term development and rehabilitation of a seasoned officer while also dealing with the poor attitude of a probationary officer. Laura has been on top of both issues and keeps me apprised of her actions and the progress she is making.

Laura continues to excel in the day to day management of her team. She is active and engaged with the on-scene management of calls for service and is complete and direct with her direction of case follow-up.

Laura's briefings are well composed and she disseminates pertinent information and crime trends.

Laura is demonstrating most if not all of the guiding principles. She has been the point of contact and friend to one of our sick officers. She has developed new training and forms that embrace problem solving and leadership. She is a driving member of the ILP focus group and demonstrates professionalism and leadership to her officers.

I acknowledge receipt of this notice and understand the listed expectations. I also understand this information will be placed in my evaluation with notations on observed improvement

_____  #5824          _____
Employee Signature                    Supervisor Signature

Exhibit-4-0011



### RENO POLICE DEPARTMENT
### Employee Performance Comment Sheet

**Date:** Feb. 10th, 2013                                                                    **PAGE 1 OF 1**

**Employee Name:**  Sgt. Laura Conklin                          **Employee ID#: 5842**

**Supervisor Name:** Lt. Keith Brown                             **Employee ID#: 1516**

      Monthly/Probationary XXX☐   Shift Rotation ☐   Exemplary ☐   Unsatisfactory ☐

---

### Narrative
This evaluation is for the Month of January 2013.

Laura is progressing well through her probationary period.  She just completed her 6 month BOE and no major issues were noted.

Laura is engaged with the department and is enthused and eager to do a good job as a supervisor.  She has initiated several projects on her own to include developing a CSI class for the officers.  This has been very time consuming and she has had to use outside resources to help facilitate the class.

Laura is also in the process of developing a new report form.  She was encouraged to assign tasks like this out to her officers and then supervise the final product.  She did exactly that and is helping the assigned officer through the process.  She is meeting with supervisors in other divisions such as domestic advocates and the  Records division to make sure that all units have input before the final product is completed.  She has been very thorough in this process and is showing leadership and supervisory skills in bringing it to fruition.

She has had to deal with a probationary employee who while eager to do the job of a patrolman, is not eager or concerned with the administrative portion of this job.  She has been firm and direct with the officer and is giving him guidance as well as direction to help him meet his probationary terms.

Laura's call management is very good.  She is very adept at patrol and sees issues as or before they arise and is quick to come up with a course of action.  She is embracing ILP and is working with her officers to get their input and their ideas of how to better work existing crime trends.

Laura's briefings continue to be informative and "state of the art", as she uses the overhead projector to illuminate crime trends, suspect photos and pertinent info.  She is currently a model of what a briefing sergeant should be.

### Performance Outcomes (if applicable)
From her 6 month BOE, she was required to flex her schedule and work two days in the IA unit to better understand the IA process.  She just completed a week long assignment with CAO and gave a very informative, positive debrief of that unit and its mission.

Laura has two more guiding principal meetings yet to attend in the next six months.

I acknowledge receipt of this notice and understand the listed expectations.  I also understand this information will be placed in my evaluation with notations on observed improvement

Employee Signature                                                              Supervisor Signature

Exhibit-4-0012



**RENO POLICE DEPARTMENT**
**Employee Performance Comment Sheet**

PAGE 1 OF 1

**Date:** January 12, 2013

**Employee Name:**  Conklin, Laura          **Employee ID#: 5824**

**Supervisor Name:**  Burfield, Joseph       **Employee ID#:  1938**

**Monthly/Probationary** ☒  **Shift Rotation** ☐  **Exemplary** ☐  **Unsatisfactory** ☐

## Narrative

This performance comment sheet will cover Sgt. Conklin from the period of December 11, 2012 through January 10, 2013.

During this rating period, Sgt. Conklin has demonstrated the needed qualities of a supervisor of her tenure.  On December 22, Sgt. Conklin supervised a fire call south of town. This fire was in the foothills of Rattle Snake Mountain and with the winds present that day, could have spread toward Donner Springs Elementary School.  Several homes were also threatened by the wild fire.  Sgt. Conklin utilized her resources correctly, made the proper notifications to residents to include a reverse 911, and coordinated with school police to shelter in place students or be prepared for an evacuation if needed.  This call ran very smoothly at the direction of Sgt. Conklin.

Another call on December 22, involved a reported sexual assault where the victim and suspect were present.  Sgt. Conklin made the appropriate decisions regarding evidence collection along with suspect and victim interviews.  Sgt. Conklin used detectives as a resource when needed which resulted in this complex call being handled without incident.

During this rating period, Sgt. Conklin advised me of a minor accident where another officer's son was at fault in the accident.  Sgt. Conklin made the proper notification to me in a timely manner.  Sgt. Conklin did seek my advice as to citing the officer's son which we discussed.  I advised Sgt. Conklin to take the relationship out of the equation and if the driver would be cited, then in this case, the driver should be cited.  Sgt. Conklin agreed and made the correct decision.

Sgt. Conklin did not have any critical administrative paperwork during this rating period. All regular paperwork was completed in a timely manner and without error.

## Performance Outcomes (if applicable)

Sgt. Conklin is working on a new "ACI" type form that would help reduce the amount of time officers are busy with paperwork.  This new form will utilize transcribers more cutting down on officers being unavailable for calls.  I would like Sgt. Conklin to continue with these efforts and report back to me by February 8th, where this project stands.

I acknowledge receipt of this notice and understand the listed expectations.  I also understand this information will be placed in my evaluation with notations on observed improvement

_____ # 5824     _____
Employee Signature                    Supervisor Signature

Exhibit-4-0013



**RENO POLICE DEPARTMENT**
**Employee Performance Comment Sheet**

**Date:** December 18, 2012

PAGE 1 OF 1

**Employee Name:** Conklin, Laura

**Employee ID#:** 5824

**Supervisor Name:** Burfield, Joseph

**Employee ID#:** 1938

Monthly/Probationary ☒   Shift Rotation ☐   Exemplary ☐   Unsatisfactory ☐

## Narrative

Sgt. Conklin continues to do a good job as a probationary Sergeant. During this rating period, there were no major incidents that Sgt. Conklin had to supervise but the day to day calls for service Sgt. Conklin handled were completed without incident. On November 14, 2012, Sgt. Conklin supervised a call that started out as a domestic battery call and ultimately resulted in a report involving a marijuana grow. Sgt. Conklin utilized her resources and called in Sgt. Chalmers to assist with the drug portion of the case and follow up for the outstanding suspect. On November 29, 2012, Sgt. Conklin was the supervisor in charge of a fatal single vehicle accident where the driver suffered a medical problem prior to the accident. Sgt. Conklin not only made the appropriate notifications for the department, she also made a notification to the property owner where the accident occurred. On December 8, 2012, Sgt. Conklin located a vehicle used in a BDW at the Sands Casino. Not only was this good police work, Sgt. Conklin quickly stepped into her primary responsibility as a supervisor and directed the coordinated effort of perimeter control and a contact team. The radio traffic was very good and others on scene or responding knew exactly what was expected of them.

Sgt. Conklin did not have to complete any Blue Teams this rating period but she did supervise a potential exposure of MRSA. Several officers, following up on a wanted person, came in contact with a person that had MRSA. Sgt. Conklin correctly handled this event and completed the proper paperwork.

During this rating period, Sgt. Conklin attended several meetings at the REOC in response to a possible flood downtown Reno November 30th. Sgt. Conklin did a good job passing on the pertinent information and learned that the City of Reno has a flood plan in place if this type of event were to occur again.

Sgt. Conklin took it upon herself to develop a plan to train officers in basic CSI. This plan was presented to the Lt. group and received positive feedback. The CSI training will start with the new group of officers in the academy.

## Performance Outcomes (if applicable)

Sgt. Conklin is an active member of the ILP guiding principle group. I would like to see Sgt. Conklin flex to CAO and work with Sgt. Bradshaw to see what the CAO's are doing for ILP and to possibly pass on new ideas to that unit. This should be accomplished prior to the next monthly evaluation if staffing needs can accommodate.

I acknowledge receipt of this notice and understand the listed expectations. I also understand this information will be placed in my evaluation with notations on observed improvement

Employee Signature

Supervisor Signature

Exhibit-4-0014

**From:** "Keith Brown" <BrownK@reno.gov>
**To:** "Laura Conklin" <ConklinL@reno.gov>
**Cc:** "Joseph Burfield" <BurfieldJ@reno.gov>
**Date:** 02/05/2013 04:01 PM
**Subject:** Your 6 month BOE

Laura;

Confirming our conversation from your six month BOE that we conducted on February 1st.

You are progressing well through your probationary period and are showing growth in both your knowledge and application of supervisory skills.

Going forward, you are demonstrating the ability to make decisions , problems solve and communicate your ideas and directions.  You are obviously self motivated and this was noted as a very positive trait for you.

We would like you to work on your delegation skills when it comes to assigning tasks out to your officers, instead of taking on the tasks yourself.  Additionally we would ask that you use your problem solving skills to help identify trends or issues that you would then assign out to your officers, with ILP in mind.

You are currently flexing into the CAO assignment for one week and we would ask that during the remaining six months of your probation, you attend one of each of the Guiding Principal meetings as well as flex into IA for two days.

Please let me know if you have any questions.

Keith

Exhibit-4-0015

CITY OF RENO EMPLOYEE PERFORMANCE REVIEW PROGRAM

## CTR

# First Line Supervisor

## Final Evaluation

Training Period **September 28, October 2-4, 2012**

Employee (print name) **Sgt. Laura Conklin**          ID# **5824**

Date of Evaluation **November 9, 2012**

Signature of Probationary Employee _____

Signature of PTS _____     ID# **4673**
<br>Sgt Kim Bradshaw

**Any area identified as being below universal standards, should have performance objectives included to raise the level of performance to an acceptable level.**

The information in this report documents the events that occurred during:
**Final Evaluation**

**Personnel Issues:** Probationary Sergeants should demonstrate knowledge of the processes and procedures available for handling personnel matters. These should include all issues involving subordinate employees and the steps necessary in handling a difficult or insubordinate employee. Timely and immediate handling of identified problems should be considered in this category. Probationary Sergeants will demonstrate knowledge between performance issues and disciplinary issues. They will be able to identify resources available to assist with personnel situations, and employee development.

**PTS Comments:**

*Sergeant Conklin demonstrated·an effective skill level and understanding of personnel issues during this rating period. She conducted a counseling/training session with two officers as a result of a Use of Force investigation she had conducted previously. She demonstrated good communication and rapport with the officers involved, with a appropriate balance between soliciting input and providing direction to the officers. Additionally, Sergeant Conklin participated in a formal interview with an Officer involved in a traffic accident and although, that*



Exhibit-4-0016

*interview was very straightforward, we discussed differing scenarios that could arise during these types of interviews.*

**Critical Incidents:** Probationary Sergeants should apply the role of the first line supervisor in directing and managing critical incidents. They should demonstrate tactical knowledge and leadership when dealing with these types of calls. This includes the management of resources, personnel and the ability to coordinate efforts with outside agencies and units.

PTS Comments:

*Sergeant Conklin effectively supervised the search for a possibly armed, suicidal subject in the hills above Stead during this rating period. She demonstrated the ability to direct multiple resources, including RPD patrol and detective personnel, on-duty SWAT officers, WCSO personnel, RAVEN, and tactic REMSA personnel. She was effective in leading the officers to a successful conclusion in which the subject was detained without injury to officers, citizens, or the subject. Sergeant Conklin displayed an appropriate understanding of her various roles as a supervisor, including lead tactician, coach, facilitator, and risk manager. Sergeant Conklin was able to honestly evaluate her performance after the incident including areas of strengths and weaknesses.*

**Non-Critical Incidents:** Probationary Sergeants should identify the role of the street supervisor in directing and managing non-critical incidents. They should demonstrate an application of laws and policies and procedures associated with non-critical incidents.

PTS Comments:

*Sergeant Conklin demonstrated effective supervisory skills in responding to and handling non-critical incidents. She demonstrated she understood her role as a first line supervisor and effectively identified potential risks in calls. Sergeant Conklin supervised officers response to a possible armed home invasion with a shot fired near the University while the First Lady was visiting the University. Sergeant Conklin quickly made decisions and provided direction when appropriate. She was very effective at handling the initial response to the call, although, she was effective at directing follow-up once the call appeared to be less serious, we did discuss techniques she could use to better direct resources after the scene was stabilized. During this same call and a few others,*

Exhibit-4-0017

*Sergeant Conklin made appropriate decisions regarding Officers responding Code 3 and additionally, effective handled on-scene media requests. As with any new supervisor, Sergeant Conklin did show areas in which she could improve. After assisting an officer with a domestic violence call with children on-scene in which the officer only did a minimal investigation, I did caution Sergeant Conklin to establish her own standards on calls within the values and mission of the department and to not just accept the status quo on calls regardless of her tenure.*

**Call Management:** Probationary Sergeants will recognize and respond effectively to issues associated with managing calls for service in the field. They must effectively evaluate and prioritize calls for service based upon available personnel, the urgency of the call for service, laws and departmental policy, and the need to provide service to the community.

**PTS Comments:**

*Sergeant Conklin was able to demonstrate effective call management during this evaluation period. She updated her MDT screen on a regular basis to keep up to date on calls pending. She also kept track of her team members and when the other shift sergeant was busy and required assistance. Sergeant Conklin's prior experience in detectives and as leader in Intelligence Led Policing (ILP) was apparent in her effective call management skills. She demonstrated the ability to look at the bigger picture and make decisions which balanced the current needs of the department versus appropriate long-term solutions.*

**Communications Skills:** Probationary Sergeants will speak in a clear, distinct and understandable manner. They must be effective in getting their point of view across and be able to explain their actions before groups and in one-on-one settings. The probationary sergeant will write in a clear and concise manner. They will be able to summarize a set of facts or ideas and present them in a written format so that they make sense on paper and are understood by the reader. The first line supervisor will listen to people and elicit further information if needed.

**PTS Comments:**

*Sergeant Conklin demonstrated effective communication skills during this rating period. She conducted professional, efficient briefings directed at crime fighting. On one occasion during this rating period a fellow sergeant took exception to Sergeant Conklin talking to his team members regarding ILP training without his knowledge. The conversation with the Officers was limited*

Exhibit-4-0018

*and Sergeant Conklin had planned on communication with her peers regarding the training, but showed good self awareness in identifying that she should have communicated with the sergeant prior to meeting with the officers on his team.*

**Leadership:**   Probationary Sergeants will effectively employ a variety of leadership styles and strategies.  Probationary Sergeants will apply situational, transformational, authoritative and democratic leadership styles as necessary.  Probationary Sergeants should continue to develop their effectiveness in technical and adaptive leadership challenges.  Leadership styles and strategies should include:  sense of purpose, character and integrity, ownership, role modeling and coaching.

**PTS Comments:**

*Sergeant Conklin demonstrated effective leadership skills during this rating period.   One example of a call which demonstrated her leadership skills was a call involving a mentally ill complainant who had previously called Internal Affairs regarding the on-scene officer (R122720626).   Sergeant Conklin responded promptly and obtained the crux of the call.   She stood by as the officer was handling the call without micromanaging, but properly took over and ended the encounter when the complainant became extremely verbally abusive towards the officer.*

**Self-Awareness:**   Probationary Sergeants will effectively use the process of self-awareness to identify their strengths and weaknesses and as a leadership tool.

**PTS Comments:**

*Sergeant Conklin demonstrated an appropriate level of self-awareness during this rating period.   Se was receptive and responsive to constructive criticism and effectively self assessed as has been described in previous categories.*

**Ethics:**   Probationary Sergeants will define ethics as they pertain to the field supervisor.  They will demonstrate sound ethical practices and assess these practices.  The probationary sergeant will demonstrate balanced judgment and decision making.

**PTS Comments:**

*Sergeant Conklin demonstrated sound ethical practices and an understanding of role modeling and influencing good ethical practices as a supervisor.   She demonstrated a*

Exhibit-4-0019

*strong work ethic and appreciation for her responsibilities
as a supervisor.*

**Time Management:**    Probationary Sergeants will develop a process for a
personnel management system to include project and time skills.  The process
should include:  *recording of time, events, projects and personnel issues,
managing time, events, projects and personnel issues and identifying
unproductive demands and consolidating time, events, projects and personnel
issues and looking for the inter-relationships.*  Probationary Sergeants will
utilize advance planning as much as possible.

**PTS Comments:**

Sergeant Conklin demonstrated effective time-management
skills during this rating period.  She is very strong in
this area, promptly prioritizing, delegating, and handling
tasks without delay and with relative ease.

**Organizational Change:**    Probationary Sergeants will comprehend and
assess organizational strategy/structure.  They will define their role in
achieving organizational objectives.

**PTS Comments:**

*Sergeant Conklin demonstrated a strong commitment to
comprehend, model, and lead organizational change during
this evaluation week.  She consistently role modeled crime
fighting and community service values.*

*Sergeant Conklin and I discussed the strengths and
weaknesses of her assigned team, most notably their
experience as a strength and an apparent consistent lack of
desire to engage in pro-active policing as a weakness, at
length during this rating period.  Sergeant Conklin
demonstrated ample knowledge, skill, and leadership to
effectively raise the production level of her team during
the remainder of this patrol bid, her success is going to
largely depend upon her ability to remain consistently
motivated regardless of the obstacles she encounters.*

**Problem Solving Skills:**   Probationary sergeants will be able to isolate
and identify problems, evaluate alternative courses of action and come to a
logical decision.  They will demonstrate emotional intelligence in their
decision-making process.  They will assess available options before taking
action. The probationary sergeant will apply their problem solving knowledge to
identified problems and enable peers and subordinates to exercise innovation
with the process.

**PTS Comments:**

Exhibit-4-0020

*Sergeant Conklin demonstrated effective problem solving
skills during this rating weak.  She displayed a good
understanding and willingness to identify and reach out to
appropriate resources.*

**Recommendation:**

Sergeant Conklin satisfactorily demonstrated the Core
competencies for the PTS program.  As such, she has
completed the Police Training Sergeant Program and it is
recommended that she be assigned to her own patrol team.

Exhibit-4-0021

6/26/2014

City of Reno Mail - Steffens eval



## Steffens eval

**Keith Brown** <brownk@reno.gov>
To: Laura Conklin <conklinl@reno.gov>
Cc: Joseph Burfield <burfieldj@reno.gov>

Tue, Jul 9, 2013 at 8:12 AM

Laura;

Very well written.  Can you add a specific case or event to Conflict Resolution to further justify the above
standards rating.  Your definition was good it just needs one specific event to demonstrate it.  I won't need to see
it again before presenting it.

Thanks
Keith

Exhibit-4-0022

6/20/2014                                                        City of Reno Mail - Your May June eval.



## Your May June eval.

**Keith Brown** <brownk@reno.gov>                        Sun, Jun 23, 2013 at 3:28 PM
To: Laura Conklin <conklinl@reno.gov>

I've got it done.  I wont be back until Monday the 1st so maybe we can sit down then and go over it.

KB

Exhibit-4-0023



**RENO POLICE DEPARTMENT**
**Employee Performance Comment Sheet**

PAGE 1 OF 1

**Date:** January 12, 2013

**Employee Name:** Conklin, Laura                     **Employee ID#:** 5824

**Supervisor Name:** Burfield, Joseph                  **Employee ID#:** 1938

Monthly/Probationary ☒   Shift Rotation ☐   Exemplary ☐   Unsatisfactory ☐

**Narrative**

This performance comment sheet will cover Sgt. Conklin from the period of December 11, 2012 through January 10, 2013.

During this rating period, Sgt. Conklin has demonstrated the needed qualities of a supervisor of her tenure. On December 22, Sgt. Conklin supervised a fire call south of town. This fire was in the foothills of Rattle Snake Mountain and with the winds present that day, could have spread toward Donner Springs Elementary School. Several homes were also threatened by the wild fire. Sgt. Conklin utilized her resources correctly, made the proper notifications to residents to include a reverse 911, and coordinated with school police to shelter in place students or be prepared for an evacuation if needed. This call ran very smoothly at the direction of Sgt. Conklin.

Another call on December 22, involved a reported sexual assault where the victim and suspect were present. Sgt. Conklin made the appropriate decisions regarding evidence collection along with suspect and victim interviews. Sgt. Conklin used detectives as a resource when needed which resulted in this complex call being handled without incident.

During this rating period, Sgt. Conklin advised me of a minor accident where another officer's son was at fault in the accident. Sgt. Conklin made the proper notification to me in a timely manner. Sgt. Conklin did seek my advice as to citing the officer's son which we discussed. I advised Sgt. Conklin to take the relationship out of the equation and if the driver would be cited, then in this case, the driver should be cited. Sgt. Conklin agreed and made the correct decision.

Sgt. Conklin did not have any critical administrative paperwork during this rating period. All regular paperwork was completed in a timely manner and without error.

**Performance Outcomes (if applicable)**

Sgt. Conklin is working on a new "ACI" type form that would help reduce the amount of time officers are busy with paperwork. This new form will utilize transcribers more cutting down on officers being unavailable for calls. I would like Sgt. Conklin to continue with these efforts and report back to me by February 8th, where this project stands.

I acknowledge receipt of this notice and understand the listed expectations. I also understand this information will be placed in my evaluation with notations on observed improvement

_____  #5824                    _____

Exhibit-4-0024



**RENO POLICE DEPARTMENT**
**Employee Performance Comment Sheet**

**Date:** Feb. 10ᵗʰ, 2013

PAGE 1 OF 1

**Employee Name:** Sgt. Laura Conklin        **Employee ID#: 5842**

**Supervisor Name:** Lt. Keith Brown          **Employee ID#: 1516**

**Monthly/Probationary XXX☐    Shift Rotation ☐    Exemplary ☐   Unsatisfactory ☐**

---

## Narrative

This evaluation is for the Month of January 2013.

Laura is progressing well through her probationary period.  She just completed her 6 month BOE and no major issues were noted.

Laura is engaged with the department and is enthused and eager to do a good job as a supervisor.  She has initiated several projects on her own to include developing a CSI class for the officers.  This has been very time consuming and she has had to use outside resources to help facilitate the class.

Laura is also in the process of developing a new report form.  She was encouraged to assign tasks like this out to her officers and then supervise the final product.  She did exactly that and is helping the assigned officer through the process.  She is meeting with supervisors in other divisions such as domestic advocates and the  Records division to make sure that all units have input before the final product is completed.  She has been very thorough in this process and is showing leadership and supervisory skills in bringing it to fruition.

She has had to deal with a probationary employee who while eager to do the job of a patrolman, is not eager or concerned with the administrative portion of this job.  She has been firm and direct with the officer and is giving him guidance as well as direction to help him meet his probationary terms.

Laura's call management is very good.  She is very adept at patrol and sees issues as or before they arise and is quick to come up with a course of action.  She is embracing ILP and is working with her officers to get their input and their ideas of how to better work existing crime trends.

Laura's briefings continue to be informative and "state of the art", as she uses the overhead projector to illuminate crime trends, suspect photos and pertinent info.  She is currently a model of what a briefing sergeant should be.

## Performance Outcomes (if applicable)

From her 6 month BOE, she was required to flex her schedule and work two days in the IA unit to better understand the IA process.  She just completed a week long assignment with CAO and gave a very informative, positive debrief of that unit and its mission.

Laura has two more guiding principal meetings yet to attend in the next six months.

I acknowledge receipt of this notice and understand the listed expectations.  I also understand this information will be placed in my evaluation with notations on observed improvement

Exhibit-4-0025



**RENO POLICE DEPARTMENT**
**Employee Performance Comment Sheet**

PAGE 1 OF 2

Date: April 15, 2013

Employee Name:  Sgt. Laura Conklin       Employee ID#:  5842

Supervisor Name: Lt. Keith Brown          Employee ID#: 1516

Monthly/Probationary XXX☐   Shift Rotation ☐   Exemplary.☐   Unsatisfactory ☐

<u>Narrative</u>

This monthly evaluation covers the month of March 2013.

Laura is progressing well in her probationary period as a new sergeant. She is engaged with the department and the officers that she supervises. Currently she is managing two different projects that she hopes to bring to conclusion within the next month. The first being a new "Incident Crime sheet" and the second being a CSI class for patrol officers. Laura is finding that it is sometimes easier to do the work herself rather than bring subordinates into the process. I have encouraged her to utilize officers and guide them through process so as to develop them.

Laura has been working through two personnel issues with her officers. The first being the long term development and rehabilitation of a seasoned officer while also dealing with the poor attitude of a probationary officer. Laura has been on top of both issues and keeps me apprised of her actions and the progress she is making.

Laura continues to excel in the day to day management of her team. She is active and engaged with the on-scene management of calls for service and is complete and direct with her direction of case follow-up.

Laura's briefings are well composed and she disseminates pertinent information and crime trends.

Laura is demonstrating most if not all of the guiding principles. She has been the point of contact and friend to one of our sick officers. She has developed new training and forms that embrace problem solving and leadership. She is a driving member of the ILP focus group and demonstrates professionalism and leadership to her officers.

I acknowledge receipt of this notice and understand the listed expectations. I also understand this information will be placed in my evaluation with notations on observed improvement

Exhibit-4-0026



**RENO POLICE DEPARTMENT**
**Employee Performance Comment Sheet**

PAGE 1 OF 1

**Date:** April 24, 2013

**Employee Name:** Sgt. Laura Conklin          **Employee ID#:5842**

**Supervisor Name:** Lt Keith Brown            **Employee ID#: 1516**

Monthly/Probationary XXX☐   Shift Rotation ☐   Exemplary ☐   Unsatisfactory ☐

---

Narrative

This evaluation cover the month of April 2013.

Laura is progressing well in her probationary period as a sergeant. During this month she assisted with the tactical control of a possible hostage situation on Melody drive. She had to be inserted into the EAT due to her experience with tactics. She organized the unit of officers and developed a tactical plan for them.

Laura has had to deal with two personnel issues this month. She currently has a probationary officer working for her who has shown signs of having a poor attitude towards administrative tasks. She identified these issues and discussed them with me. We decided that a BOE was the best course of action. She was prepared for the BOE and clearly stated her facts , what actions she had taken to improve the officer and gave recommendations to the BOE.

The second personnel issue involved an officer that may have failed to engage during a use of force. Laura has been working closely with the officer to build his self esteem and communication skills as he had previously been on a performance contract for those issues. Laura was quick to discuss the issue with me, gave recommendations on how she would like to handle the issue. She was on point with her recommendations and accepted my direction well. She will be reviewing the officers past use of force history to see if this is a reoccurring theme or a one time incident before developing a course of action to improve the officers performance.

Laura is administratively organized and has embraced our new Telestaff scheduling system so well that she instructs other supervisors. Her paperwork is complete and on time.

Laura's call management and on scene management is very good. She treats the public fairly when managing CFS and then organizes and directs her officers when on scene.

Performance Outcomes (if applicable)

For the month of May Laura needs to finalize how she is going to handle the officer who did not engage, develop the performance contract and then implement it. Time is of the essence as this issue will extend into the next shift bid.

I acknowledge receipt of this notice and understand the listed expectations. I also understand this information will be placed in my evaluation with notations on observed improvement

Exhibit-4-0027



**RENO POLICE DEPARTMENT**
**Employee Performance Comment Sheet**

PAGE 1 OF 2

**Date:** June 23, 2013

**Employee Name: Sgt. Laura Conklin**          **Employee ID#: 5824**

**Supervisor Name: Lt. Keith Brown**          **Employee ID#: 1516**

**Monthly/Probationary** ☐XXX   **Shift Rotation** ☐   **Exemplary** ☐   **Unsatisfactory** ☐

---

Narrative
This evalauation is for the month of May and will include the first two weeks of June 2013.

Laura continues to show steady growth as a probationary sergeant. She excels at organization and problem solving. During this last month, Laura organized, scheduled and facilitated CSI training for not only all of the PTO's , but also numerous officers who wanted to become CSI qualified. She created this training when she was faced with the problem of not having photo or print qualified officers on her shift. She took the initiative to plan the training through FIS and then coordinated the purchase of the necessary equipment through our supply. Laura was faced with numerous scheduling issues as well as PTO officers who were reluctant to take the course. She handled all of the issues well.

Laura has also been working on a new TIC form that was born out of her first patrol teams idea to streamline our reporting process. The form took many months to create, refine and coordinate. Laura learned that while the form in concept would streamline patrols work, it affected other units outside of patrol. Again she worked well with other units to ultimately bring the form to fruition.

During the first weeks of May Laura dealt with the previously identified personnel issues. She accurately evaluated an officers use of force and spoke to that officer candidly about the perception that some officers had and then got his perspective of what had happened. She was able to mitigate a lot of the issues and did so in a manner that built the officer up instead of tearing him down.

Laura's second personnel issue involved a BOE for a probationary officer that ultimately ended with the officer being terminated. Laura had correctly identified several performance related issues that the employee was having. She accurately presented those facts to the BOE and presented herself well. After the BOE was concluded but before the final decision was made, Laura completed an evaluation on the same officer that painted a more positive picture of the employee. After the employee's termination, we discussed the importance of accurate meaningful evaluations. Several of the employee's performance issues were not mentioned in the written evaluation. Laura serves on a committee that is trying to reform our current evaluation method. We took the time to discuss whether our evaluation method is to blame or is it our candidness and accuracy that is too blame. Laura completed another officer's evaluation later in the month. This time I asked her to meet with that officer prior to the eval, get his input about strengths, weaknesses , career goals etc., prior to finishing his evaluation.

---

I acknowledge receipt of this notice and understand the listed expectations. I also understand this information will be placed in my evaluation with notations on observed improvement

Exhibit-4-0028



**RENO POLICE DEPARTMENT**
**Employee Performance Comment Sheet**

PAGE 2 OF 2

**Date:** June 23, 2013

**Employee Name:** Sgt. Laura Conklin          **Employee ID#:** 5824

**Supervisor Name:** Lt. Keith Brown          **Employee ID#:** 1516

**Monthly/Probationary** ☐XXX   **Shift Rotation** ☐   **Exemplary** ☐   **Unsatisfactory** ☐

Performance Outcomes (If applicable)
Laura has been assigned to the graveyard shift for the remainder of her probation.  Laura
should discuss evaluations with Lt. Burfield , especially the recommendations that the
evaluation committee has made.  Laura should then discuss with Lt. Burfield how she plans to
incorporate these changes into her personal evaluation system.

I acknowledge receipt of this notice and understand the listed expectations.  I also understand this information will be placed in
my evaluation with notations on observed improvement

Exhibit-4-0029

CITY OF RENO EMPLOYEE PERFORMANCE REVIEW PROGRAM

## CTR

# First Line Supervisor

## A Phase Evaluation

Training Period __September 3-6, 2012__

Employee (print name)__Sgt Laura Conklin__        ID#__5824__

Date of Evaluation__September 28, 2012__

Signature of Probationary Employee _____ 

Signature of PTS _____ ID#__4673__
Sgt Kim Bradshaw

Any area identified as being below universal standards, should have performance objectives included to raise the level of performance to an acceptable level.

The information in this report documents the events that occurred during the
**Mid Term Evaluation**                    **/ Phase        A**

---

**Personnel Issues:** Probationary Sergeants should demonstrate knowledge of the processes and procedures available for handling personnel matters. These should include all issues involving subordinate employees and the steps necessary in handling a difficult or insubordinate employee. Timely and immediate handling of identified problems should be considered in this category. Probationary Sergeants will demonstrate knowledge between performance issues and disciplinary issues. They will be able to identify resources available to assist with personnel situations, and employee development.

**PTS Comments:**

*Sergeant Conklin handled several personnel issues during this rating period and demonstrated she had the knowledge and desire to appropriately address personnel problems. She effectively investigated two use of force incidents and completed one CDS claim during this rating week. She needed very little assistance from me to appropriately handle these tasks.*



Exhibit-4-0030

**Critical Incidents:** Probationary Sergeants should apply the role of the first line supervisor in directing and managing critical incidents. They should demonstrate tactical knowledge and leadership when dealing with these types of calls. This includes the management of resources, personnel and the ability to coordinate efforts with outside agencies and units.

**PTS Comments:**

*Sergeant Conklin did not handle a critical incident during this evaluation week. Although, we did discuss several critical incident scenarios and Sergeant Conklin demonstrated an understanding of her role in managing incidents as a front line supervisor.*

**Non-Critical Incidents:** Probationary Sergeants should identify the role of the street supervisor in directing and managing non-critical incidents. They should demonstrate an application of laws and policies and procedures associated with non-critical incidents.

**PTS Comments:**

*Sergeant Conklin consistently demonstrated a good knowledge of Department Policies and Procedures, criminal law, and civil liability while handling non-critical incidents throughout the week. She effectively supervised calls involving a missing Alzheimer's patient, an occupied, stolen vehicle which fled from Spark PD, an attempt to contact a suspect in a residential burglary with a missing firearm, and several death investigations. Sergeant Conklin had a good approach with officers on scene in properly supervising and obtaining necessary information without being overbearing.*

**Call Management:** Probationary Sergeants will recognize and respond effectively to issues associated with managing calls for service in the field. They must effectively evaluate and prioritize calls for service based upon available personnel, the urgency of the call for service, laws and departmental policy, and the need to provide service to the community.

**PTS Comments:**

*Sgt Conklin was able to demonstrate effective call management during this evaluation period. She updated her MDT screen on a regular basis to keep up to date on calls pending. She also kept track of the officers on her team and what calls they were on. She demonstrated her ability to identify risk on several calls, including holding a call of a wanted subject at the Peppermill while she obtained*

Exhibit-4-0031

*more information and then directed the officer as to her expectations when he responded. Additionally, she recognized the risks involving an out of state runaway and appropriately assigned an officer to follow-up and then briefed the Watch Commander.*

**Communications Skills:** Probationary Sergeants will speak in a clear, distinct and understandable manner. They must be effective in getting their point of view across and be able to explain their actions before groups and in one-on-one settings. The probationary sergeant will write in a clear and concise manner. They will be able to summarize a set of facts or ideas and present them in a written format so that they make sense on paper and are understood by the reader. The first line supervisor will listen to people and elicit further information if needed.

**PTS Comments:**

*Sergeant Conklin demonstrated the ability to communicate in an understandable and clear manner during this rating period. She demonstrated good command presence and a professional demeanor during briefings and team meetings. Sergeant Conklin's written products were completed at an above standard level. Sergeant Conklin handled a phone call from Lorraine Baldwinson, who is a frequent caller and complainer to Internal Affairs. Sergeant Conklin showed good professionalism and leadership in her communication with Ms. Baldwinson and with Officer Phoenix who responded to the call.*

**Leadership:** Probationary Sergeants will effectively employ a variety of leadership styles and strategies. Probationary Sergeants will apply situational, transformational, authoritative and democratic leadership styles as necessary. Probationary Sergeants should continue to develop their effectiveness in technical and adaptive leadership challenges. Leadership styles and strategies should include: sense of purpose, character and integrity, ownership, role modeling and coaching.

**PTS Comments:**

*Sergeant Conklin showed effective leadership abilities during this rating week. She demonstrated an understanding of the various leadership styles and flexibility in her approach with officers, supervisors, and citizens. Sergeant Conklin responded to a young officer who had stopped his first occupied stolen vehicle. She coached, praised, and directed this officer effectively, but differently than the officers on the team she was*

Exhibit-4-0032

supervising, who are primarily officers with over 20 years of experience.

**Self-Awareness:**   Probationary Sergeants will effectively use the process of self-awareness to identify their strengths and weaknesses and as a leadership tool.

**PTS Comments:**

Sergeant Conklin demonstrated a good understanding of emotional intelligence during this rating period.  She was appropriately self critical and confident in her ability to make decisions.  She responded well to criticism and correctly self identified areas of improvement.

**Ethics:**   Probationary Sergeants will define ethics as they pertain to the field supervisor.  They will demonstrate sound ethical practices and assess thess practices.  The probationary sergeant will demonstrate balanced judgment and decision making.

**PTS Comments:**

Sergeant Conklin demonstrated an understanding of her ethical responsibilities as a supervisor during this rating period.  She demonstrated a strong work ethic and desire to "model the way".  She readily volunteered to handle a use of force involving 1st watch officers after the 1st watch sergeants had left and consistently handled reports for all three districts.

**Time Management:**   Probationary Sergeants will develop a process for a personnel management system to include project and time skills.  The process should include:  recording of time, events, projects and personnel issues, managing time, events, projects and personnel issues and identifying unproductive demands and consolidating time, events, projects and personnel issues and looking for the inter-relationships.  Probationary Sergeants will utilize advance planning as much as possible.

**PTS Comments:**

Two days of this evaluation period were relatively busy and Sgt. Conklin showed a good ability to multi-task and prioritize calls based upon risk.  During one particular time period, she worked in the station writing a use of force and a cds report, while managing calls and multiple incidents over the radio.

Exhibit-4-0033

**Organizational Change:**      Probationary Sergeants will comprehend and assess organizational strategy/structure.  They will define their role in achieving organizational objectives.

**PTS Comments:**

*Sergeant Conklin demonstrated an understanding of department values and mission and her obligations to these in her role as a supervisor.  She has participated in the departments guiding principles group on Intelligence Led policing and did a good job of promoting crime fighting during her briefings.*

**Problem Solving Skills:**   Probationary sergeants will be able to isolate and identify problems, evaluate alternative courses of action and come to a logical decision.  They will demonstrate emotional intelligence in their decision-making process.  They will assess available options before taking action. The probationary sergeant will apply their problem solving knowledge to identified problems and enable peers and subordinates to exercise innovation with the process.

**PTS Comments:**

*Sergeant Conklin demonstrated good problem solving skills during this rating period.  She willingly located resources to obtain information and input and recognize alternative solutions to problems.*

**PTS Recommendation:**
Sgt Conklin satisfactorily demonstrated the Core Competencies for the Administrative (A) Phase of the PTS program.  As such, it is recommended that she be continued in the program and be assigned to the Operational (B) Phase of the PTS program.

Exhibit-4-0034

CITY OF RENO EMPLOYEE PERFORMANCE REVIEW PROGRAM

## CTR

# First Line Supervisor

## Final Evaluation

Training Period __September 28, October 2-4, 2012__

Employee (print name) __Sgt. Laura Conklin__      ID# __5824__

Date of Evaluation __November 9, 2012__

Signature of Probationary Employee _____

Signature of PTS _____      ID# __4673__
                          Sgt Kim Bradshaw

Any area identified as being below universal standards, should have performance objectives
included to raise the level of performance to an acceptable level.

The information in this report documents the events that occurred during:
**Final Evaluation**

**Personnel Issues:** Probationary Sergeants should demonstrate knowledge of
the processes and procedures available for handling personnel matters. These
should include all issues involving subordinate employees and the steps
necessary in handling a difficult or insubordinate employee. Timely and
immediate handling of identified problems should be considered in this
category. Probationary Sergeants will demonstrate knowledge between
performance issues and disciplinary issues. They will be able to identify
resources available to assist with personnel situations, and employee
development.

**PTS Comments:**

*Sergeant Conklin demonstrated an effective skill level and*
*understanding of personnel issues during this rating*
*period. She conducted a counseling/training session with*
*two officers as a result of a Use of Force investigation*
*she had conducted previously. She demonstrated good*
*communication and rapport with the officers involved, with*
*a appropriate balance between soliciting input and*
*providing direction to the officers. Additionally,*
*Sergeant Conklin participated in a formal interview with an*
*Officer involved in a traffic accident and although, that*

Exhibit-4-0035

interview was very straightforward, we discussed differing scenarios that could arise during these types of interviews.

**Critical Incidents:** Probationary Sergeants should apply the role of the first line supervisor in directing and managing critical incidents. They should demonstrate tactical knowledge and leadership when dealing with these types of calls. This includes the management of resources, personnel and the ability to coordinate efforts with outside agencies and units.

**PTS Comments:**

Sergeant Conklin effectively supervised the search for a possibly armed, suicidal subject in the hills above Stead during this rating period. She demonstrated the ability to direct multiple resources, including RPD patrol and detective personnel, on-duty SWAT officers, WCSO personnel, RAVEN, and tactic REMSA personnel. She was effective in leading the officers to a successful conclusion in which the subject was detained without injury to officers, citizens, or the subject. Sergeant Conklin displayed an appropriate understanding of her various roles as a supervisor, including lead tactician, coach, facilitator, and risk manager. Sergeant Conklin was able to honestly evaluate her performance after the incident including areas of strengths and weaknesses.

**Non-Critical Incidents:** Probationary Sergeants should identify the role of the street supervisor in directing and managing non-critical incidents. They should demonstrate an application of laws and policies and procedures associated with non-critical incidents.

**PTS Comments:**

Sergeant Conklin demonstrated effective supervisory skills in responding to and handling non-critical incidents. She demonstrated she understood her role as a first line supervisor and effectively identified potential risks in calls. Sergeant Conklin supervised officers response to a possible armed home invasion with a shot fired near the University while the First Lady was visiting the University. Sergeant Conklin quickly made decisions and provided direction when appropriate. She was very effective at handling the initial response to the call, although, she was effective at directing follow-up once the call appeared to be less serious, we did discuss techniques she could use to better direct resources after the scene was stabilized. During this same call and a few others,

Exhibit-4-0036

*Sergeant Conklin made appropriate decisions regarding Officers responding Code 3 and additionally, effectively handled on-scene media requests. As with any new supervisor, Sergeant Conklin did show areas in which she could improve. After assisting an officer with a domestic violence call with children on-scene, I did caution Sergeant Conklin to establish her own standards on calls within the values and mission of the department and to not just accept the status quo on calls regardless of her tenure.*

**Call Management:** Probationary Sergeants will recognize and respond effectively to issues associated with managing calls for service in the field. They must effectively evaluate and prioritize calls for service based upon available personnel, the urgency of the call for service, laws and departmental policy, and the need to provide service to the community.

**PTS Comments:**

*Sergeant Conklin was able to demonstrate effective call management during this evaluation period. She updated her MDT screen on a regular basis to keep up to date on calls pending. She also kept track of her team members and when the other shift sergeant was busy and required assistance. Sergeant Conklin's prior experience in detectives and as leader in Intelligence Led Policing (ILP) was apparent in her effective call management skills. She demonstrated the ability to look at the bigger picture and make decisions which balanced the current needs of the department versus appropriate long-term solutions.*

**Communications Skills:** Probationary Sergeants will speak in a clear, distinct and understandable manner. They must be effective in getting their point of view across and be able to explain their actions before groups and in one-on-one settings. The probationary sergeant will write in a clear and concise manner. They will be able to summarize a set of facts or ideas and present them in a written format so that they make sense on paper and are understood by the reader. The first line supervisor will listen to people and elicit further information if needed.

**PTS Comments:**

*Sergeant Conklin demonstrated effective communication skills during this rating period. She conducted professional, efficient briefings directed at crime fighting. On one occasion during this rating period a fellow sergeant took exception to Sergeant Conklin talking to his team members regarding ILP training without his knowledge. The conversation with the Officers was limited*

Exhibit-4-0037

and Sergeant Conklin had planned on communication with her peers regarding the training, but showed good self awareness in identifying that she should have communicated with the sergeant prior to meeting with the officers on his team.

**Leadership:** Probationary Sergeants will effectively employ a variety of leadership styles and strategies. Probationary Sergeants will apply situational, transformational, authoritative and democratic leadership styles as necessary. Probationary Sergeants should continue to develop their effectiveness in technical and adaptive leadership challenges. Leadership styles and strategies should include: sense of purpose, character and integrity, ownership, role modeling and coaching.

**PTS Comments:**

Sergeant Conklin demonstrated effective leadership skills during this rating period. One example of a call which demonstrated her leadership skills was a call involving a mentally ill complainant who had previously called Internal Affairs regarding the on-scene officer (R122720626). Sergeant Conklin responded promptly and obtained the crux of the call. She stood by as the officer was handling the call without micromanaging, but properly took over and ended the encounter when the complainant became extremely verbally abusive towards the officer.

**Self-Awareness:** Probationary Sergeants will effectively use the process of self-awareness to identify their strengths and weaknesses and as a leadership tool.

**PTS Comments:**

Sergeant Conklin demonstrated an appropriate level of self-awareness during this rating period. Se was receptive and responsive to constructive criticism and effectively self assessed as has been described in previous categories.

**Ethics:** Probationary Sergeants will define ethics as they pertain to the field supervisor. They will demonstrate sound ethical practices and assess these practices. The probationary sergeant will demonstrate balanced judgment and decision making.

**PTS Comments:**

Sergeant Conklin demonstrated sound ethical practices and an understanding of role modeling and influencing good ethical practices as a supervisor. She demonstrated a

Exhibit-4-0038

*strong work ethic and appreciation for her responsibilities as a supervisor.*

**Time Management:**  Probationary Sergeants will develop a process for a personnel management system to include project and time skills.  The process should include:  *recording of time, events, projects and personnel issues, managing time, events, projects and personnel issues and identifying unproductive demands and consolidating time, events, projects and personnel issues and looking for the inter-relationships.*  Probationary Sergeants will utilize advance planning as much as possible.

**PTS Comments:**

Sergeant Conklin demonstrated effective time-management skills during this rating period.  She is very strong in this area, promptly prioritizing, delegating, and handling tasks without delay and with relative ease.

**Organizational Change:**  Probationary Sergeants will comprehend and assess organizational strategy/structure.  They will define their role in achieving organizational objectives.

**PTS Comments:**

*Sergeant Conklin demonstrated a strong commitment to comprehend, model, and lead organizational change during this evaluation week.  She consistently role modeled crime fighting and community service values.*

*Sergeant Conklin and I discussed the strengths and weaknesses of her assigned team, most notably their experience as a strength and an apparent consistent lack of desire to engage in pro-active policing as a weakness, at length during this rating period.  Sergeant Conklin demonstrated ample knowledge, skill, and leadership to effectively raise the production level of her team during the remainder of this patrol bid, her success is going to largely depend upon her ability to remain consistently motivated regardless of the obstacles she encounters.*

**Problem Solving Skills:**  Probationary sergeants will be able to isolate and identify problems, evaluate alternative courses of action and come to a logical decision.  They will demonstrate emotional intelligence in their decision-making process.  They will assess available options before taking action.  The probationary sergeant will apply their problem solving knowledge to identified problems and enable peers and subordinates to exercise innovation with the process.

**PTS Comments:**

Exhibit-4-0039

*Sergeant Conklin demonstrated effective problem solving skills during this rating weak. She displayed a good understanding and willingness to identify and reach out to appropriate resources.*

**Recommendation:**

Sergeant Conklin satisfactorily demonstrated the Core competencies for the PTS program. As such, she has completed the Police Training Sergeant Program and it is recommended that she be assigned to her own patrol team.

Exhibit-4-0040



**RENO POLICE DEPARTMENT**
**Employee Performance Comment Sheet**

**Date:** November 9, 2012                                    PAGE 1 OF 1

**Employee Name:** Conklin, Laura                **Employee ID#:** 5824

**Supervisor Name:** Burfield, Joseph            **Employee ID#:** 1938

Monthly/Probationary ☒   Shift Rotation ☐   Exemplary ☐   Unsatisfactory ☐

## Narrative

This performance comment sheet will cover Sgt. Conklin from the period of October 10, 2012 through November 10, 2012.

Sgt. Conklin was tasked to get officers to work a volunteer assignment involving a local fundraiser. I gave Sgt. Conklin the contact information and details of the assignment before I left for days off. Sgt. Conklin sent Commander Wiecking a follow-up e-mail asking what she should do with the request as she did not know about staffing. If Sgt. Conklin would have contacted the organizer of this event, she would have known how to accomplish this task. In speaking with Sgt. Conklin later, she admitted that she learned from this assignment and in the future would make the supervisory decision instead of asking the Commander. This was evident in a similar assignment where I had Sgt. Conklin get volunteers for an awards ceremony for Special Olympics. Not only did Sgt. Conklin make arrangements for officers to attend this event on her shift, she also took the initiative to staff the event the following day, without being asked.

Sgt. Conklin was advised that one of our family members was sick and might have cancer. Sgt. Conklin stayed informed, gave out the appropriate information to "PDEveryone" and took the extra step of arranging rides for this Officer during his Chemotherapy treatments. This is an excellent example of implementing one of the departments Guiding Principles, family enrichment, without being asked. Sgt. Conklin is a member of the ILP group and during this rating period attended a team meeting. Sgt. Conklin arranged for, and taught other officers, how to present ILP concepts as an after briefing training, department wide.

Sgt. Conklin is learning the blue team process as she encounters those situations. During this rating period, Sgt. Conklin completed an ADI on an Officer that failed to respond to directions. Sgt. Conklin completed this assignment in a timely manner and the ADI report was complete when it was sent up the chain to Lt. Rulla.

Sgt. Conklin has good time management, reviews her teams Tiburon reports, and follows up on assigned / required training. During this rating period, Sgt. Conklin completed two yearly evaluations prior to the due date. Sgt. Conklin is progressing well as a new supervisor.

## Performance Outcomes (if applicable)

Sgt. Conklin is still learning how to be proactive with crime trends and utilizing her resources. For this reason, Sgt. Conklin will attend TCAR meetings for the next month and report what tools and resources she will utilize for crime trends during her shift. This information will be presented to me prior to her next monthly evaluation on 12-10-12.

I acknowledge receipt of this notice and understand the listed expectations. I also understand this information will be placed in my evaluation with notations on observed improvement

_(signature)_ 5824    11/9/12            _(signature)_ 1938

Exhibit-4-0041



**RENO POLICE DEPARTMENT**
**Employee Performance Comment Sheet**

PAGE 1 OF 1

Date: December 18, 2012

Employee Name: Conklin, Laura          Employee ID#: 5824

Supervisor Name: Burfield, Joseph       Employee ID#: 1938

Monthly/Probationary ☒   Shift Rotation ☐   Exemplary ☐   Unsatisfactory ☐

## Narrative

Sgt. Conklin continues to do a good job as a probationary Sergeant. During this rating period, there were no major incidents that Sgt. Conklin had to supervise but the day to day calls for service Sgt. Conklin handled were completed without incident. On November 14, 2012, Sgt. Conklin supervised a call that started out as a domestic battery call and ultimately resulted in a report involving a marijuana grow. Sgt. Conklin utilized her resources and called in Sgt. Chalmers to assist with the drug portion of the case and follow up for the outstanding suspect. On November 29, 2012, Sgt. Conklin was the supervisor in charge of a fatal single vehicle accident where the driver suffered a medical problem prior to the accident. Sgt. Conklin not only made the appropriate notifications for the department, she also made a notification to the property owner where the accident occurred. On December 8, 2012, Sgt. Conklin located a vehicle used in a BDW at the Sands Casino. Not only was this good police work, Sgt. Conklin quickly stepped into her primary responsibility as a supervisor and directed the coordinated effort of perimeter control and a contact team. The radio traffic was very good and others on scene or responding knew exactly what was expected of them.

Sgt. Conklin did not have to complete any Blue Teams this rating period but she did supervise a potential exposure of MRSA. Several officers, following up on a wanted person, came in contact with a person that had MRSA. Sgt. Conklin correctly handled this event and completed the proper paperwork.

During this rating period, Sgt. Conklin attended several meetings at the REOC in response to a possible flood downtown Reno November 30th. Sgt. Conklin did a good job passing on the pertinent information and learned that the City of Reno has a flood plan in place if this type of event were to occur again.

Sgt. Conklin took it upon herself to develop a plan to train officers in basic CSI. This plan was presented to the Lt. group and received positive feedback. The CSI training will start with the new group of officers in the academy.

## Performance Outcomes (if applicable)

Sgt. Conklin is an active member of the ILP guiding principle group. I would like to see Sgt. Conklin flex to CAO and work with Sgt. Bradshaw to see what the CAO's are doing for ILP and to possibly pass on new ideas to that unit. This should be accomplished prior to the next monthly evaluation if staffing needs can accommodate.

I acknowledge receipt of this notice and understand the listed expectations. I also understand this information will be placed in my evaluation with notations on observed improvement

Exhibit-4-0042

does not improve within the given time frame.

## PROBATIONARY EVALUATION

1. The probationary employee will be evaluated by their current supervisor or their designee each month during their probation period

2. Monthly evaluations will be documented on an Employee Performance Comment Sheet. The monthly evaluation will consist of identifying strengths, weaknesses, and performance outcomes. *What are the categories? Never told*

3. If an employee "does not meet standards" in any category, documentation is required by the rater to explain the deficient performance. *— Never received documentation.*

4. Performance Outcomes will be provided to assist the employee with making required improvement(s).

5. A comprehensive evaluation will be completed six months and three months prior to the confirmation date. *did not get these*

## EMPLOYEE PERFORMANCE COMMENT SHEET

1. An Employee Performance Comment Sheet will be used to document exceptionally good or unacceptable performance. The contents will be incorporated into the employee's next evaluation.

2. If the evaluation is contested, the comment sheets will be maintained in the file, **pursuant to state law**, until the matter is resolved.

3. Once the evaluation is completed and signed by the employee, the supervisor completing the evaluation will destroy the employee performance comment sheet(s).

## EMPLOYEE

Employees may discuss or contest their evaluation, in a professional manner, at the following levels – consecutively:

    1) Rater
    2) Rater's immediate supervisor
    3) Division Commander
    4) Chief of Police

The employee may attach a separate written addendum which will become a permanent part of the evaluation. The employee may add their written addendum to the evaluation at any point during the below listed routing steps, up to and including, after their copy is given to them.

## ROUTING

Employee evaluations will be routed as follows:

Exhibit-4-0043

- The rater completes the initial evaluation
- The rater holds an interview and counseling session with the employee
- The rater's immediate supervisor reviews, adds comments (optional), and signs
- The Division Commander reviews, adds comments (optional), and signs
- The evaluation is sent to the Chief of Police/Designee for review

After all comments and signatures are obtained, a copy will be placed into the employee's permanent personnel file.  A copy is also given to the employee.

Exhibit-4-0044



**RENO POLICE DEPARTMENT**
**Employee Performance Comment Sheet**

**Date:** EXAMPLE

PAGE 1 OF 2

**Employee Name:**                                    **Employee ID#:**

**Supervisor Name:**                                  **Employee ID#:**

   **Monthly/Probationary** ☐   **Complete Probation** ☐   **Exemplary** ☐   **Unsatisfactory** ☐

Narrative

Sgt. XXXX continues to make monthly gains and is progressing well in his probationary period. During the month of October XXXX has dealt with several investigations and critical incidents that have tested his supervisory skills and his tactical knowledge and he has done well in both categories.

On October 14th, XXXX was involved in a case of multiple drive by shootings in the Mira Loma area. He guided the officers through the investigation between rival gang members and assisted RGU officers and detectives throughout the investigation. XXXX has the ability to work well with other supervisors and units.

The next day XXXX was aware of an RGU operation surveilling both of the houses involved in the recent dispute. He had the tactical forethought to see problems with the operation before they occurred. While he was not the supervisor in charge of the operation, he quickly stepped in when the problems surfaced. Due to XXXX quick thinking and direct actions, he prevented an OIS fro occurring or worse, an officer being injured by a citizen who was operating within their legal rights.

After both incidents, XXXX was able to debrief the graveyard officers with respect to the good and bad things that had just happened and then he directed his own resources into the neighborhood.

xxxxx is showing the ability to quietly take charge of scenes and cases and give direction to his officers without being over baring or having the appearance of micro managing.

xxxx has twice had to manage investigations surrounding assaults by drag racing clubs. XXXX has lead the officers through the investigations, garnered the resources he needed to conduct the investigation, then documented the incidents himself in our briefing logs.

xxxxx briefings are very informative and he continues to embrace the ILP philosophy and he uses the TCARD system to conduct his briefings.

I acknowledge receipt of this notice and understand the listed expectations. I also understand this information will be placed in my evaluation with notations on observed improvement

_____          _____
Employee Signature                                      Supervisor Signature

Exhibit-4-0045



**RENO POLICE DEPARTMENT**
**Employee Performance Comment Sheet**

**Date:** EXAMPLE                                                PAGE 2 OF 2

**Employee Name:**                              **Employee ID#:**

**Supervisor Name:**                            **Employee ID#:**

    **Monthly/Probationary** ☐   **Complete Probation** ☐   **Exemplary** ☐   **Unsatisfactory** ☐

Performance Outcomes (if applicable)
xxxx has had several personnel issues on his team, the most important being an ADI that he
generated. Another would be the EIS alerts that several of his employees routinely activate. I
would like to see xxxxx TDY to Internal Affairs for at least two days, with the direct purpose of
seeing how the ADI is handled once he generates it, and to gather a better understanding of
the EIS system. This should be completed by his December eval.

Performance Outcomes (if applicable)

I acknowledge receipt of this notice and understand the listed expectations. I also understand this information will be placed in
my evaluation with notations on observed improvement

_____                    _____
Employee Signature                                 Supervisor Signature

Exhibit-4-0046



**RENO POLICE DEPARTMENT**
**Employee Performance Comment Sheet**

**Date:** Example                                                          PAGE 1 OF 2

**Employee Name:**                                   **Employee ID#:**

**Supervisor Name:**                                 **Employee ID#:**

    **Monthly/Probationary** ☐   **Complete Probation** ☐   **Exemplary** ☐   **Unsatisfactory** ☐

---

Narrative
This monthly evaluation is for the month of March  xxxx.

xxxx continues to make improvement on a weekly basis and is progressing through his probationary period.

xxxx has demonstrated very good leadership skills and is focused on working with his central team and managing their day to day operations.  xxxx has dealt with reduced staffing due to injuries, training and transfers.  He has done a very good job of making sure the central team is at least minimally staffed and focused on central issues.

During this past month xxxx has dealt with one personnel issue involving an off duty officer. xxxx used his resources well, worked through the various problems and resolved the issue in a professional manner.  I was not present during the incident and later gave xxxx some ideas of how I would have handled it.  xxxx was very receptive to other ideas but in the end, he made the proper decision at the time and utilized the on duty watch commander for guidance.

xxxx is relaxing into the role of a supervisor and is more comfortable in making decisions and in taking action than he was two months ago.  He keeps me informed of problems and then tells me how he wants to proceed and more importantly to me, why he wants to proceed in a certain direction.  I like the way he works through calls and investigations and for the most part I give him suggestions but see very little need for change in any of his recent decisions.

On March 29th, xxxx supervised a CFS where a domestic battery had occurred and the suspect was inside his room at a separate location and refusing to come out for officers.  xxxx called me when he realized that force was going to be necessary to remove the suspect from the room and in all likely hood to subdue the suspect.  I agreed with xxxx's plan of action and he was able to answer all of my questions about legal authority and justification.  I was unaware that xxxx had previously consulted another sergeant before calling me.  This showed good use of his resources and discretionary time in my estimation.  Xxxx put a contact team together and supervised them while they forced open a door and tasered the suspect.  The entire event was well structured.

I acknowledge receipt of this notice and understand the listed expectations.  I also understand this information will be placed in my evaluation with notations on observed improvement

_____                          _____
Employee Signature                                 Supervisor Signature

Exhibit-4-0047



**RENO POLICE DEPARTMENT**
**Employee Performance Comment Sheet**

**PAGE 2 OF 2**

**Date:** Example

**Employee Name:**                                    **Employee ID#:**

**Supervisor Name:**                                 **Employee ID#:**

   Monthly/Probationary ☐    Complete Probation ☐    Exemplary ☐    Unsatisfactory ☐

Performance Outcomes (if applicable)

I acknowledge receipt of this notice and understand the listed expectations.  I also understand this information will be placed in my evaluation with notations on observed improvement

_____                    _____
Employee Signature                                                   Supervisor Signature

Exhibit-4-0048



### RENO POLICE DEPARTMENT
### Employee Performance Comment Sheet

**Date:** Example                                                        **PAGE 1 OF 2**

**Employee Name:**                                    **Employee ID#:**

**Supervisor Name:**                                  **Employee ID#:**

Monthly/Probationary ☐   Complete Probation ☐   Exemplary ☐   Unsatisfactory ☐

---

Narrative
   This monthly evaluation covers the Month of February xxxx

xxxx continues to grow and excel as a probationary sergeant and is progressing  well .

During this past month xxxx has been inundated with personnel issues and has handled them all with maturity and confidence.  He has kept me apprised about his actions and recommendations and has kept the employee's and the city's best interest in mind while handling the issues.

The first issue was a hold over from the previous month.  xxxx crafted an EPCO for an officer who had not treated a victim with empathy or respect and had then failed to properly investigate the case.  xxxx met with the officer off site and carefully explained all of the issues. He then crafted performance outcomes to help the employee improve his performance.

xxxx finished an ADI request on an officer who was believed to have been rude and insensitive to a female complainant and then put her in handcuffs for no apparent reason other than she asked him to.

The last involved a female prisoner who made allegations that an officer had touched her breasts.  xxxx interviewed the female, the officer and then gathered additional information before briefing me on the issue.  xxxx had a plan on how to handle the situation and was able to explain his reasoning before making a recommendation to me.

xxxx continues to be very engaged with day to day issues and CFS.  He routinely  responds to his officers CFS so he can see their performance first hand.

xxxx conducted a community presentation for the Summerset Homeowners association ref. Active  Violence.  xxxx is well versed in tactics and has a good sense of community service.  His presentation was very well received and he received an email of thanks from the association.

During the past week, xxxx flexed to the CAO unit to work through community issues and problem solving.

xxxx , on his own accord, contacted the victim's father in the aforementioned case where his officer had been rude and unprofessional.  He took the time to explain the issues to the father and to apologize for any action that had been unprofessional.  xxxx explained the corrective

I acknowledge receipt of this notice and understand the listed expectations.  I also understand this information will be placed in my evaluation with notations on observed improvement

_____                    _____
Employee Signature                                  Supervisor Signature

Exhibit-4-0049



**RENO POLICE DEPARTMENT**
**Employee Performance Comment Sheet**

**Date:** Example                                                                                    PAGE 2 OF 2

**Employee Name:**                                                    **Employee ID#:**

**Supervisor Name:**                                                  **Employee ID#:**

    **Monthly/Probationary** ☐   **Complete Probation** ☐   **Exemplary** ☐   **Unsatisfactory** ☐

measures that he was taking and the father appeared genuinely thankful.  This is just one example of xxxx's maturity and seniority within this dept.

Performance Outcomes (if applicable)
I would like xxxx to bring the COPPS training class to his team via the new Moodle distant learning system.  While this class is voluntary, I would like xxxx to explain its benefit to his officers and get their buy in before he demonstrates this system to them.

Performance Outcomes (if applicable)

I acknowledge receipt of this notice and understand the listed expectations.  I also understand this information will be placed in my evaluation with notations on observed improvement

_____                    _____
Employee Signature                                               Supervisor Signature

Exhibit-4-0050

# EXHIBIT 5
## Affidavit of Plaintiff Laura Conklin

# EXHIBIT 5

## AFFIDAVIT OF LAURA CONKLIN IN SUPPORT OF COMPLAINT

STATE OF NEVADA      )
                      ) ss.

COUNTY OF WASHOE   )

I, Laura Conklin, Affiant herein, after first being duly sworn under oath, and under penalty of perjury, deposes and says:

1.      I was hired by the Reno Police Department ("RPD" or the "Department") on May 4, 1998. At the time of her hiring, she was assigned the position of Officer (on probation).

2.      Throughout my tenure with RPD, I am and have been open about my homosexual orientation.

3.      Very soon after my hiring, fellow employees, officers, and supervisors began engaging in various acts of discrimination against me on account of my sex and sexual orientation. By way of example, many RPD and City employees frequently referred to me in derogatory and inappropriate terms such as "cunt" and "dyke"; others made disparaging comments about the propriety of a woman and/or lesbian serving as a police officer.

4.      Defamatory comments and aggressive actions like the ones described above quickly became an enduring feature throughout my tenure with the RPD and persist to this day.

5.      During my initial training, I was assigned to the supervision of Officer Pete Rinaldo ("Rinaldo").

6.      Sometime on or about September 1998, Rinaldo approached me to tell me that he was sexually attracted to my fellow trainee, Wendy Woods ("Woods"). While seated in the patrol car with me, Ronaldo told me that I was "not doing well" and that, if I wished to pass my training, I would convince Woods to "skinny dip" with him. I refused Rinaldo's request.

Exhibit-5-0001

7.    Rinaldo later asked me to photograph Woods while changing in her underwear. Again, I refused Rinaldo's request.

8.    Shortly thereafter, Rinaldo gave me poor evaluations and began spreading gossip and rumors about me, and frequently referred to me as a "cunt" or a "dyke."

9.    Rinaldo continued in his vindictive behavior and comments toward me for the better part of a decade, causing animosity against me within the RPD to swell to the point where going forward I was considered *persona non grata* amongst my co-workers and managers.

10.   I filed complaints with the Department against Rinaldo. In turn, Rinaldo filed a harassment complaint against me. The RPD issued me a "cease and desist" order to stop discussing my complaints against Rinaldo and the Department.  I was told, "that is Pete [Rinaldo] being Pete," in response to Rinaldo's conduct.  Rinaldo was not disciplined for his behavior nor has his behavior ever been addressed by the Department; Rinaldo still retains the position of Police Training Officer to this day.

11.   During a deposition of Commander Shannon Wiecking, then City of Reno Attorney Jack Campbell ("Campbell"), made a reference to me and other lesbians as "dykes on bikes." Campbell has since left the employment of the City of Reno.

12.   As a consequence of my resistance to this and other discriminatory behavior, she was denied several opportunities for promotion and advancement in the RPD throughout her tenure.

13.   Beginning in April 2004, I left my position as Officer to pursue detective work with the RPD. My first term as a detective lasted from approximately April 2004 through January 2009.

14.   When I initially applied for the detective position, I made it very clear to my supervisors that my preference was to work in the Crimes Against Persons division. I made

Exhibit-5-0002

nine (9) separate applications to work the homicide assignment during this time.

15.     I met all of the RPD performance and competence requirements to work as a homicide detective at the time of each of my applications.

16.     On eight (8) out of nine (9) of my applications for homicide, I was denied the position. In each of those instances, the person who received the appointment was a straight male with equal or lesser qualifications (including, e.g., seniority, discipline, test scores, recommendations, etc.).

17.     In lieu of work on the homicide team, I was frequently assigned to less desirable work in family crimes, burglary, and auto theft.

18.     After an 18-month hiatus, I returned to detective work in June 2010 and remained a detective through May 2011.

19.     During the above-referenced time, I requested to work in any other assignment than family crimes and submitted a formal application request to work in the sex crimes division. My request was denied in favor of a straight male applicant, and I was again placed in the Family Crimes Unit.

20.     As a consequence of RPD's refusal to assign me the coveted work I desired and for which I was eminently qualified, RPD adversely affected my career growth for several years.

21.     In 2016, after obtaining the position of Probationary Sergeant again, I was additionally subjected to rigorous monthly evaluations Lt. Scott Shaw, who was not my direct supervisor, yet indicated he wanted to evaluate me. The evaluation was allowed by Commander Katre even though Shaw did not supervise me on a daily basis and had only been on the same shift as me for a couple of hours. Lt. Shaw and other Lieutenants disparately applied much less scrutiny in his evaluations of my male counterparts (other probationary sergeants).

Exhibit-5-0003

22. In 2018, after applying for a Robbery Homicide Detective Sergeant Position and Family Crimes Detective Position, I was told that a de facto "test" was in fact an "interview" so the RPD would not have to maintain a list of qualified applicants for future openings. The "interview" however consisted of eight (8) detective sergeant specific questions that had to be studied for previously, in order for an applicant to be successful. Both applicants ultimately selected for the position, Colby Palmer and Larmon Smith were male.

23. After leaving detective work to return to beat officer status, I studied for the Sergeant test.

24. During a deposition of Rinaldo, it was discovered the SET and its supervisors frequently used the euphemisms "Canadian" and "Monday" to describe African-American civilians targeted for disparate treatment. I also learned that Rinaldo used the term "spic" to describe a Hispanic officer. During this time, Dave Evans was the SET Sergeant and Officer Rinaldo was a member of the SET Team and engaged in and allowed this behavior.

25. I volunteered as a witness to expose the habitual use of racial epithets against civilians and officers during an internal investigation.

26. During a deposition concerning the use of racial epithets, I disclosed under oath information concerning the racially discriminatory activities of fellow officers and supervisors above me.

27. Attorneys for the City of Reno forwarded a copy of the transcript of the above-mentioned deposition to then Reno Police Chief Dave Evans ("Evans"), who supervised the SET Team, as a Sergeant during the time the euphemism and racist comments were pervasive. Evans read the transcript and made notes of my statements incriminating and/or implicating the Department and supervisors of the SET. Dave Evans used this information against me during his career advancement up to the level of Deputy

Exhibit-5-0004

1  Chief.

2        28.    As one of the two female supervisors at the RPD, I attempted to institute a

3  training course specifically for female officers to allow them to accomplish the same tasks

4  as their male counterparts. Although the training program was approved and ordered by

5  Chief Jason Soto, Deputy Chief Robinson and Deputy Chief Venzon didn't agree with the

6  female only training and refused to sign the required authorizing documents on the grounds

7  that such female specific training was "sexist" towards men. Such arbitrary refusal to follow

8  the direction of Chief Soto is further evidence of the open hostility towards the advancement

9  of female officers and pervasive culture of discrimination within the RPD.

10        29.    In April 2012, I applied for the position of Sergeant with the RPD.

11        30.    In response to my application, numerous co-workers and supervisors, some

12  friendly and others hostile, warned me that my efforts in making the application for Sergeant

13  were futile. One RPD official went as far as to warn me, "you don't know your place," and

14  noted that a lesbian had no business applying for the position of RPD Sergeant.

15        31.    In spite of the opposition to my efforts, I proceeded with the Sergeant

16  application process.

17        32.    I took the Sergeant test and earned the highest placement score in my cohort

18  group. Additionally, I achieved the highest score possible on the oral battery

19        33.    In spite of my glaring qualifications for the position, RPD leadership,

20  including Evans, had decided to pass over me for Sergeant.

21        34.    In August 2012, Deputy Chief Tommy Robinson ("Robinson") informed me

22  that Evans had been caught on tape making derogatory, homophobic remarks about me. The

23  taped conversations ultimately were disclosed to the general public, generating a highly

24  publicized scandal that forced Evans to resign his post. When the tapes were made public,

25  this caused me humiliation and embarrassment when I had to tell my father that I was called

Exhibit-5-0005

1  derogatory terms.

2     35.     Upon information and belief, because of the potential for continued bad press

3  and liability exposure, the RPD decided to promote me to Sergeant on a probationary basis.

4  My promotion came on the same day as Evans' resignation. But for the publication of

5  Evans' statements, the RPD would not have authorized the promotion.

6     36.     At the same time I was promoted, the RPD promoted a straight male officer,

7  Brian Dye ("Dye"), with virtually identical credentials and Sergeant tenure as me to the

8  position.

9     37.     During my probational time as Sergeant I was given stellar performance

10 reviews and supervisorial comments on my work include: "Laura continues to show steady

11 growth as a probationary sergeant," "Laura is progressing well in her probationary period as

12 a sergeant," "Laura continues to excel in the day to day management of her team," and "Sgt.

13 Conklin has demonstrated the needed qualities of a supervisor of her tenure."

14    38.     During this same period of time, I was nominated for "Sergeant of the Bid"

15 by Lieutenant Burfield, my direct supervisor, because I demonstrated exemplary

16 performance and effort as a probationary Sergeant.

17    39.     In August 2013, I was demoted from my Sergeant position after my alleged

18 involvement in an illicit private sale of firearms while on duty. The officer promoted to

19 Sergeant at the same time as me, Dye, was also involved in the transaction; however, he was

20 not demoted as a result.

21    40.     Contrary to what RPD supervisors expressed in my performance reviews and

22 her 6-month BOE, the RPD maintains that the demotion from my Sergeant position was

23 pursuant to unsatisfactory adjustment/performance, and not as a form of discipline.

24    41.     Following my demotion, I continued to be a frequent target for harassment

25 and systemic discrimination through sexually-charged language and epithets, which have

Exhibit-5-0006

1    continued to the present time.

2       42.    · On August 9, 2016, I was scheduled to testify in a homicide trial in the

3    United States District Court in Reno.

4       43.    A couple of weeks before the trial, I received a phone call from the Reno

5    Deputy City Attorney Rob Boney ("Boney") stating that the defense had requested

6    exculpatory *Brady* evidence I may have gathered at the crime scene. Boney told me, "You

7    didn't have any *Brady* materials, but we did send the defense a letter stating you sold a gun

8    while on duty."

9       44.    My alleged sale of a gun on duty is in no way related to the probative

10   evidence of the underlying homicide trial.

11      45.    Boney is a subordinate of Reno City Attorney Karl Hall ("Hall").

12      46.    On information and belief, Hall instructed Boney to send the letter to defense

13   counsel in order to embarrass and undermine me and to limit my effectiveness as a Sergeant.

14      47.    Over my 20-year career with the City, I engaged in legally protected conduct

15   by filing complaints with RPD to address issues of harassment and discrimination on the

16   basis of my sex, gender, and sexual orientation.

17      48.    The City of Reno was informed and aware of the unlawful and negligent

18   actions of its employees through multiple complaints filed by me over the course of my 20-

19   year career.

20   / / /

21   / / /

22   / / /

23   / / /

24   / / /

25      49.    The City retaliated against me because I opposed that which I reasonably and

Exhibit-5-0007

in good faith believed to be unlawful discrimination and harassment in my employment, and also because I complained about said harassment and discrimination.

FURTHER AFFIANT SAYETH NAUGHT.

    Dated this <u>1st</u> day of <u>June</u>, 2018

BERNADETTE FRANCIS
NOTARY PUBLIC
STATE OF NEVADA
My Commission Expires: 2-17-2020
Certificate No: 16-1861-2

_____
Laura Conklin

SUBSCRIBED AND SWORN TO before me this <u>1st</u> day of <u>June</u>, 2018.

_____
Notary Public

Exhibit-5-0008